ROSS E. HIXSON, JR., INDIVIDUALLY AND IN HIS CAPACITY AS ADMINISTRATOR OF THE ESTATE OF GINA RENEE HIXSON, DECEASED, PETITIONER-APPELLANT v. PAMELA KREBS, RESPONDENT-APPELLEE

No. COA99-239

(Filed 21 December 1999)

**1. Wrongful Death— death of child—parental entitlement to settlement proceeds—determination of abandonment of child—exceptions to rule**

In a case determining entitlement to the proceeds of a wrongful death settlement in the estate of the parties' daughter, the trial court erred in granting summary judgment in favor of respondent-

mother on the issue of whether she abandoned her daughter before her daughter's fatal accident because a jury could conclude that respondent relinquished her parental claims and abandoned decedent, which would bar respondent from the proceeds of the wrongful death settlement under N.C.G.S. § 31A-2 unless respondent meets an exception under the statute such as: (1) resuming care of the child at least one year prior to the death of the child, and continuing the care until her death; or (2) being deprived of the custody of the child under an order of a court of competent jurisdiction and substantially complying with all orders of the court requiring contribution for the child's support.

**2. Wrongful Death— death of child—parental entitlement to settlement proceeds—abandonment of child—no exceptions met**

In a case determining entitlement to the proceeds of a wrongful death settlement in the estate of the parties' daughter, if on remand for trial the court determines that respondent-mother abandoned her child, she will not be entitled to share in her child's wrongful death benefits because: (1) she was not deprived of the custody of her child under an order of a court of competent jurisdiction; and: (2) she does not meet the requirements for an exception under N.C.G.S. § 31A-2(2).

Appeal by petitioner from order entered 15 December 1998 by Judge W. Osmond Smith in Granville County Superior Court. Heard in the Court of Appeals 28 October 1999.

*Edmundson & Burnette, L.L.P., by R. Gene Edmundson and J. Thomas Burnette, for petitioner-appellant.*

*Haywood, Denny & Miller, L.L.P., by Robert Levin and Thomas H. Moore, for respondent-appellee.*

McGEE, Judge.

Petitioner Ross E. Hixson, Jr. appeals from an order of summary judgment entered in favor of respondent Pamela Krebs determining that respondent is entitled to one-half of the proceeds from a wrongful death settlement in the estate of the parties' daughter, Gina Renee Hixson. The record tends to show the following: Petitioner and respondent were formerly married to one another. Gina Renee Hixson and Wendy Elaine Hixson were born of the parties' marriage. Petitioner and respondent signed a separation agreement, which was

**HIXSON v. KREBS**

[136 N.C. App. 183 (1999)]

incorporated into their divorce judgment in 1976, agreeing that petitioner would have custody of the parties' two minor daughters, and respondent would have visitation. Gina Hixson was eighteen years old when she was killed in an automobile accident in 1991. Petitioner qualified as administrator of his daughter's estate and instituted a wrongful death action on behalf of his daughter's estate.

Petitioner recovered $95,000 in the wrongful death action. In his official capacity as administrator of his daughter's estate, petitioner filed a declaratory action in August 1997 seeking a declaration of rights to the proceeds recovered in the wrongful death action. Respondent answered and subsequently filed a motion for summary judgment. By order entered 1 December 1997, summary judgment was granted for respondent. Petitioner appealed the summary judgment to our Court. The appeal was dismissed by this Court in an unpublished opinion on 18 August 1998 because petitioner filed suit only in his capacity as executor of the estate of Gina Renee Hixson, and the estate was not an aggrieved party entitled to appeal the summary judgment in the declaratory judgment action to determine division of the wrongful death proceeds.

Petitioner filed an identical complaint on 12 August 1998, except the second complaint was on behalf of petitioner individually as well as in his official capacity as administrator of his daughter's estate. Respondent filed an answer on 8 September 1998 and moved for summary judgment on 22 October and 5 November 1998. Petitioner also filed a motion for summary judgment on 5 November 1998. The trial court granted summary judgment in favor of respondent on 15 December 1998, and petitioner filed notice of appeal to our Court on 8 January 1999. Petitioner failed to include a table of authorities in his brief in violation of N.C.R. App. P. Rules 26(g) and 28(b)(1). Nonetheless, we will consider the arguments of the petitioner under the provisions of N.C.R. App. P. Rule 2 "to prevent manifest injustice" to petitioner.

**[1]** Petitioner argues on appeal that the trial court erred in granting summary judgment for respondent because respondent has not proven the absence of a question of material fact regarding whether she abandoned her daughter before the fatal accident. Gina Hixson died without a will, and our state's Intestate Succession Act provides that:

> If the intestate is not survived by a child, children or any lineal descendent of a deceased child or children, but is survived by

both parents, they shall take in equal shares, or if either parent is dead, the surviving parent shall take the entire share.

N.C. Gen. Stat. § 29-15(3) (1984); *see Newlin v. Gill, State Treasurer*, 293 N.C. 348, 349, 237 S.E.2d 819, 820 (1977). However, a parent who abandons her or his child may not share in the intestate estate. Chapter 31A of the North Carolina General Statutes, entitled "Acts Barring Property Rights," provides:

Any parent who has wilfully abandoned the care and maintenance of his or her child shall lose all right to intestate succession in any part of the child's estate and all right to administer the estate of the child, except—

(1) Where the abandoning parent resumed its care and maintenance at least one year prior to the death of the child and continued the same until its death; or

(2) Where a parent has been deprived of the custody of his or her child under an order of a court of competent jurisdiction and the parent has substantially complied with all orders of the court requiring contribution to the support of the child.

N.C. Gen. Stat. § 31A-2 (1984). The statute also precludes the abandoning parent from sharing in wrongful death proceeds. *Williford v. Williford*, 26 N.C. App. 61, 63, 214 S.E.2d 787, 788, *aff'd*, 288 N.C. 506, 219 S.E.2d 220 (1975). Thus, if respondent "wilfully abandoned the care and maintenance" of her deceased daughter, she may not share in the $95,000 wrongful death award. N.C.G.S. § 31A-2. However, by the second exception to the rule, if respondent was "deprived of the custody [of the decedent] under an order of a court of competent jurisdiction," N.C.G.S. 31A-2(2), and respondent "substantially complied with all orders of the court requiring contribution to the support of the child," *id.*, then she may "share in the wrongful death proceeds notwithstanding an abandonment of the daughter by [her]." *Lessard v. Lessard*, 77 N.C. App. 97, 102, 334 S.E.2d 475, 478 (1985), *aff'd*, 316 N.C. 546, 342 S.E.2d 522 (1986).

Respondent argues that "[t]he issue of how the wrongful death proceeds are to be split in this case has been previously determined by this Court and this Court's prior decision is binding upon the estate." We disagree. Our previous opinion in this case recited the facts and then held that "[a]t the outset, we note that petitioner's appeal must be dismissed." We concluded neither the estate, nor petitioner in his capacity as executor of the estate, were aggrieved parties

entitled to appeal. Hence, our Court did not reach the question whether respondent was entitled to share in the wrongful death award.

In *Lessard*, however, our Court did address the same issue that is now before us: should summary judgment be granted when there is evidence that a parent abandoned a child, but that parent may qualify under the second exception to the rule precluding abandoning parents from sharing in the child's estate. Our Court determined in *Lessard* that whether or not a father abandoned his daughter could not be appropriately resolved by summary judgment where the mother presented evidence that the father "made few, if any, attempts to manifest any love or concern for, or interest in, the child, and refused to perform 'a natural obligation of parental care' by declining to permit the child to live in his home." *Lessard*, 77 N.C. App. at 101, 334 S.E.2d at 477-78. We next determined that under N.C.G.S. § 31A-2(2) the father's substantial compliance with a judgment requiring his financial support of the child also was a question for the jury. *Lessard*, 77 N.C. App. at 101-02, 334 S.E.2d at 478. As in *Lessard*, we first address the issue of abandonment and then consider the exception in N.C.G.S. § 31A-2(2).

Petitioner filed affidavits in support of his motion for summary judgment signed by him and the parties' daughter, Wendy Hixson. Respondent argues that the trial court should not have considered "[t]he affidavits [which] . . . contain improper hearsay assertions and improper legal conclusions[.]" However, the record shows that the affidavits provided by petitioner contain facts from personal knowledge, independent of any legal conclusions, *see* N.C. Gen. Stat. § 1A-1, Rule 56(e), and therefore we reject respondent's contention.

Petitioner stated in his affidavit that: respondent's visits with their children were infrequent and short in duration after the divorce in 1976. Respondent agreed to give custody of their children to petitioner if he paid her bills and made a down payment on a car for her. Respondent did not visit the children more frequently or for longer periods after the visitation schedule was modified in 1977 but did mail birthday and Christmas gifts consisting of a doll or stuffed animal to their daughters. Respondent moved to another state in 1982, and when petitioner asked the Department of Social Services for assistance in collecting child support, he was told that obtaining child support would be very difficult. Respondent's visits were sporadic until 1988, when Gina refused to communicate or visit with respond-

ent any further. From 1988 until her death in 1991, Gina had no relationship with respondent. Petitioner requested child support from respondent for the benefit of their minor daughters over the years but did not receive any child support from respondent for their daughters. Petitioner also paid the entirety of Gina's college expenses shortly before she died. Petitioner worked two jobs from 1970 to 1992 to provide adequate care and financial support for the children. Respondent did not contribute to the $10,000 in burial expenses that petitioner paid following their daughter's death.

Wendy stated in her affidavit filed in support of petitioner's summary judgment motion that: when she was a minor, she saw respondent infrequently and that she continues to see respondent infrequently; as children, she and Gina visited the respondent on some holidays and sometimes in the summers. She further stated that when Gina reached ten years of age, she refused to see respondent but would see her occasionally. She stated that for the two years prior to her death, Gina totally refused to visit with respondent when respondent was in town, except infrequently, and then for only thirty minutes. Wendy does not recall respondent's ever giving her or her sister more than five dollars at any time. During the last two years of her sister's life, Gina did not want to and did not have a relationship with respondent.

Our Supreme Court has defined abandonment as:

[A]ny wilful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. [Citations omitted.] Wilful intent is an integral part of abandonment and this is a question of fact to be determined from the evidence.

. . . .

Abandonment has also been defined as wilful neglect and refusal to perform the natural and legal obligations of parental care and support. It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child. [Citation omitted.]

*Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (quoted in *Lessard*, 77 N.C. App. at 101, 334 S.E.2d at 477). As in *Lessard*, respondent in this case may have abandoned the decedent according

to the definitions cited in *Pratt*. Respondent may have "wilful[ly]" and "intentional[ly]" behaved in such a way as to "evince[] a settled purpose to forego all parental duties and relinquish all parental claims to the child" when she made infrequent and short visits with her daughters and refused to support them financially. *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608. It could be found that she "refus[ed] to perform the natural and legal obligations of parental care and support," as she may have "withh[eld] [her] presence, [her] love, [her] care, the opportunity to display filial affection, and willfully neglect[ed] to lend support and maintenance." Thus, a jury could conclude that respondent "relinquish[ed] all parental claims and abandon[ed] the [decedent]." *Id.* Summary judgment was granted in error on the issue of whether respondent abandoned Gina Hixson.

[2] Nevertheless, if respondent was "deprived of the custody" of Gina Hixson "under an order of a court of competent jurisdiction" and "substantially complied with all orders of the court requiring contribution to the support of the child," N.C.G.S. § 31A-2(2) provides she may share in the wrongful death benefits even if she abandoned her child. The separation agreement dated 3 February 1975 between petitioner and respondent provides in relevant part that:

NOW, THEREFORE, said parties for and in consideration of the acts and things herein respectively by them agreed to be done and performed, do mutually agree, each with the other as follows:

. . . .

It is agreed that the said Ross Hixson, Jr. shall have the exclusive supervision, custody, care and control of the said Wendy Elaine Hixson and Gina Renee Hixson, and the said Pamela Kay Hixson shall visit with the said children so long as it does not interfere with their health, eating and sleeping habits.

. . . .

It is agreed that the said Ross Hixson, Jr. shall be responsible for and pay all outstanding bills as of the date of this separation agreement.

We first consider whether, pursuant to their separation agreement, respondent was "deprived of the custody of [] her child under an order of a court of competent jurisdiction[.]" N.C.G.S. 31A-2(2). The 8 April 1976 divorce judgment provides:

THIS CAUSE having come on to be heard before the Undersigned Judge Presiding on the 8 day of April, 1976, and it appearing to the Court that both parties to this action have reached a mutual agreement and desire the same to be embodied in this Court's Judgment, the Court now makes the following Findings of Fact:

. . . .

That there were two children born of this marriage[.] These children are now, under the terms of the Separation Agreement hereinafter referred to, in the custody of [Ross Hixson].

That [Ross Hixson] remains a fit and proper person to have custody of these children subject only to such visitation privileges as [Pamela Hixson] and [Ross Hixson] may agree upon from time to time.

That [Pamela Hixson] and [Ross Hixson] entered into a Separation Agreement dated February 3, 1975, a copy of which is attached to the Complaint in this action, and which terms both [Pamela Hixson] and [Ross Hixson] agree remain just and equitable in this matter.

. . . .

All controversies raised by the Complaint and Answer filed in this action have been settled by the parties.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

. . . .

That the terms of the Separation Agreement dated February 3, 1975, are incorporated herein by reference thereto.

The divorce judgment, in its findings of fact and conclusions of law, relied upon the provisions of the prior separation agreement and clearly did not "deprive" respondent of the custody of Gina Hixson. "[T]he legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning." *Wood v. Stevens & Co.*, 297 N.C. 636, 643, 256 S.E.2d 692, 697 (1979) (citations omitted); *see also Regional Acceptance Corp. v. Powers*, 327 N.C. 274, 278, 394 S.E.2d 147, 149 (1990) ("Where words of a statute are not defined, the courts presume that the legislature intended to give them their ordinary meaning determined according to the context in which those

words are ordinarily used."). To "deprive" is "to take something away from." The American Heritage College Dictionary 374 (3d ed. 1997); *see also* Black's Law Dictionary 304 (6th ed. 1991) ("deprivation" is "a taking away or confiscation[.]"). Respondent agreed that petitioner would have custody of their children in the parties' separation agreement signed more than a year prior to the entry of the divorce judgment. Thus, respondent was not "deprived of the custody of [] her child under an order of a court of competent jurisdiction," and respondent does not meet the requirements for an exception under N.C.G.S. § 31A-2(2).

We therefore reverse the entry of summary judgment and remand for trial.

Reversed and remanded.

Judges HORTON and EDMUNDS concur.