PAMMY AUSTIN EZELL as Guardian ad Litem of MICHELLE LYNN MORLAND, Plaintiff and NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE, Intervenor v. GRACE HOSPITAL, INC., JOHN F. WHALLEY, M.D. AND MOUNTAIN VIEW PEDIATRICS, P.A., Defendants

No. COA04-721

(Filed 20 December 2005)

**1. Public Assistance— Medicaid subrogation lien—equitable principles not applicable**

The plain language of N.C.G.S. § 108A-57(a) precludes the application of common law equitable principles to the right of subrogation of the Division of Medical Assistance.

EZELL v. GRACE HOSP., INC.

[175 N.C. App. 56 (2005)]

**2. Public Assistance— medical malpractice—Medicaid lien— causal connection required**

The trial court did not err by finding that recovery of medical malpractice settlement amounts by the Division of Medical Assistance (DMA) should be limited to the amount paid for medical services that corresponded to defendants' alleged negligence. Without a requirement of a causal nexus between the DMA lien and a Medicaid beneficiary's third-party recovery, DMA would have unlimited subrogation rights to a beneficiary's proceeds obtained from a third party, rather than to those proceeds obtained "by reason of injury or death," as specified in N.C.G.S. § 108A-57(a).

**3. Public Assistance— Medicaid lien—limited—not a violation of federal law**

Reducing the Division of Medical Assistance's lien on medical malpractice proceeds was not contrary to federal Medicaid law. The statute requires reimbursement only to the extent of the third party's legal liability for injuries resulting in "care and service" paid by Medicaid.

**4. Public Assistance— Medicaid lien—medical malpractice proceeds—findings insufficient**

A medical malpractice settlement approval was remanded for further findings about the proceeds plaintiff obtained by reason of injury or death. There was no evidence to support a causal connection between the alleged negligence and Medicaid payments.

**5. Public Assistance— Medicaid lien—medical malpractice proceeds—presumption of ownership**

The trial court acknowledged the Division of Medical Assistance's right to subrogation, but did not apply a presumption that medical malpractice settlement proceeds were the property of plaintiff.

**6. Public Assistance— Medicaid lien—medical malpractice— limited to proceeds obtained by reason of injury**

Although the Division of Medical Assistance correctly cited the underlying policy that subrogation statutes were designed to replenish Medicaid funds, those statutes require that DMA's subrogation rights be limited to proceeds obtained by reason of injury.

Judge STEELMAN concurring in part and dissenting in part.

**EZELL v. GRACE HOSP., INC.**

[175 N.C. App. 56 (2005)]

Appeal by intervenor from order entered on 22 January 2004 by Judge Robert C. Ervin, in Burke County Superior Court. Heard in the Court of Appeals 1 February 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Belinda A. Smith, for intervenor-appellant.*

*Elam & Rousseaux, P.A., by Michael J. Rousseaux and William H. Elam, for plaintiff-appellee.*

*No brief filed for defendants.*

HUDSON, Judge.

Plaintiff filed a medical malpractice suit against defendants Grace Hospital, Inc., John F. Whalley, M.D., and Mountain View Pediatrics, Inc., for alleged negligent medical care. The plaintiffs settled with the tort defendants and the Department of Health and Human Services, Division of Medical Assistance (DMA) intervened, seeking payment of its statutory Medicaid lien for payments it made on behalf of plaintiff, a Medicaid recipient. On 22 January 2004, the trial court denied DMA's motion requesting payment of its full statutory Medicaid lien of one-third of the settlement amount, instead awarding DMA a lesser sum, amounting to a pro-rated share of treatment allegedly related to the defendants' negligence. DMA appeals.

Michelle Morland was born on 16 May 1998 at Grace Hospital in Morganton, North Carolina. Immediately following birth, she displayed signs of respiratory distress. Dr. John F. Whalley, a pediatrician, assumed care for her. After several hours of respiratory problems, she was transferred to another hospital for additional care. Several years later, Michelle Morland was diagnosed with Cerebral Palsy. Upon belief that Michelle's condition was caused by the respiratory difficulties she experienced after birth, Michelle's grandmother and guardian, Pammy Austin Ezell, filed a medical malpractice suit as Guardian Ad Litem for Michelle, against Dr. Whalley and Grace Hospital. From the time of her birth, Michelle Morland has been a recipient of Medicaid.

Early in the lawsuit, plaintiff and defendant Grace Hospital entered into a settlement agreement for $100,000 which is not at issue in this appeal. As discovery proceeded with the remaining defendants, deposition testimony revealed credible evidence by numerous experts that no causal link existed between the alleged negligence following birth and Michelle's cerebral palsy. Plaintiff thus entered

into a second settlement with defendants Whalley and Mountain View Pediatrics, also in the amount of $100,000. At the 12 December 2004 hearing for judicial approval of the agreement, the trial court heard arguments from DMA that the settlement proceeds should be subject to a lien in favor of DMA for Medicaid payments made on behalf of Michele Morland. On the date of the hearing, the Medicaid lien totaled $86,840.92.

[1] On 2 January 2004, Judge Robert C. Ervin approved the settlement but limited DMA's recovery to $8,054.01, the amount of medical expenses he determined to be causally related to the alleged negligence of defendants Whalley and Mountain View. On 22 January 2004, after hearing DMA's Motion for a New Hearing and to Intervene, Judge Ervin entered another order which clarified and upheld the terms of his previous approval. DMA appeals from Judge Ervin's 22 January 2004 order limiting DMA's subrogation rights to the proceeds obtained on behalf of plaintiff from defendants Whalley and Mountain View Pediatrics. In its brief, appellant first argues that the trial court committed reversible error in its application of common law principles of equity to the Division of Medical Assistance's right of subrogation. Appellant argues that N.C. Gen. Stat. § 108A-57(a)(2003) abrogates the equitable principles of subrogation. We agree. N.C. Gen. Stat. § 108A-57(a) provides as follows:

> Notwithstanding any other provisions of the law, to the extent of payments under this Part, the State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assistance, or of the beneficiary's personal representative, heirs, or the administrator or executor of the estate, against any person . . . Any attorney retained by the beneficiary of the assistance shall, out of the proceeds obtained on behalf of the beneficiary by settlement with, judgment against, or otherwise from a third party by reason of injury or death, distribute to the Department the amount of assistance paid by the Department on behalf of or to the beneficiary, as prorated with the claims of all others having medical subrogation rights or medical liens against the amount received or recovered, but the amount paid to the Department shall not exceed one-third of the gross amount obtained or recovered.

*Id.* (emphasis added). The trial court found that subrogation under N.C. Gen. Stat. § 108A-57 does not alter the common law application of principles of equity. Citing dictates of "equity, good conscience and

public policy," the trial court found that awarding DMA one-third of plaintiff's recovery would be unfair, resulting in plaintiff receiving less than ten percent of the settlement proceeds.

Our standard of review of the order of the superior court is de novo, as defendants have raised an issue of law. *Medina v. Div. of Soc. Servs.*, 165 N.C. App. 502, 505, 598 S.E.2d 707, 709 (2004), citing *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992). In matters of statutory construction, this Court must "ascertain and effectuate the intent of the legislative body." *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980). It is well-established that legislative intent may be determined from the language of the statute, and "if a statute is facially clear and unambiguous, leaving no room for interpretation, the courts will enforce the statute as written." *Haight v. Travelers/Aetna Property Casualty Corp.*, 132 N.C. App. 673, 675, 514 S.E.2d 102, 104 (1999). We conclude that plain language of the statute here precludes the application of equitable subrogation principles. We conclude that the legislature specifically abrogated the application of common law principles of equity when it stated that the State "shall be subrogated to all rights of recovery," "notwithstanding any other provisions of the law." N.C. Gen. Stat. § 108A-57(a). Although our Supreme Court has held that subrogation is "a creature of equity," designed to prevent injustice, *General Ins. Co. of Am. v. Faulkner*, 259 N.C. 317, 324, 130 S.E.2d 645, 651 (1963), we must enforce the statute as written and if the legislature wishes for common law equitable principles to apply to this statute, it may certainly amend it accordingly.

[2] Appellant also argues that the trial court erred in finding that DMA's recovery should be limited to the amount it paid for medical services that corresponded to defendants' alleged negligence. We disagree. In its brief, appellant argues that "North Carolina law entitles the State to full reimbursement for any Medicaid payments made on a plaintiff's behalf in the event the plaintiff recovers an award for damages." (emphasis added). However, we conclude that the plain language of the statute, which gives the State subrogation rights to proceeds obtained from a third-party "by reason of injury or death," indicates an intent to limit that subrogation right to the amount resulting from such injury or death. N.C. Gen. Stat. § 108A-57 (a). Indeed, in a 24 November 2003 letter to plaintiffs regarding the amount of the Medicaid lien, an assistant chief of the third party recovery section of DMA stated that Medicaid must be reimbursed for "medical care and services needed as a result of [plaintiff's] injury."

Appellant cites *Cates v. Wilson*, 321 N.C. 1, 361 S.E.2d 634 (1987), *Campbell v. N.C. Dep't of Human Res.*, 153 N.C. App. 305, 569 S.E.2d 670 (2002), and *Payne v. N.C. Dept. of Human Res.*, 126 N.C. App. 672, 486 S.E.2d 469, *disc. review denied*, 347 N.C. 269, 493 S.E.2d 656 (1997), in support of its position, but none of these cases involved the issue of causation or whether damages may be apportioned according to the amounts paid which were related to the injuries.

The legislature surely did not intend that DMA could recoup for medical treatment unrelated to the injury for which the beneficiary received third-party recovery. Without a requirement of a causal nexus between the DMA lien and a Medicaid beneficiary's third-party recovery, DMA could theoretically do so. For example, under the interpretation encouraged by Appellant, if a Medicaid beneficiary received treatment for cancer, and later received treatment for injuries sustained in a car accident for which she recovered damages from a third-party, DMA could impose a lien for the cancer treatment as well as for the injuries related to the accident. This would allow DMA unlimited subrogation rights to a beneficiary's proceeds obtained from a third-party, rather than to those proceeds obtained "by reason of injury or death," as specified in N.C. Gen. Stat. § 108A-57(a).

[3] Appellant also argues that reducing DMA's lien is contrary to federal Medicaid law. We disagree. It is undisputed that Federal law requires the State to collect money from third party tortfeasors liable to Medicaid beneficiaries. 42 U.S.C.A. § 1396(a)(25) provides:

A State plan for medical assistance must provide:

\*\*\*\*

(A) that the State or local agency administering such plan will take all reasonable measures to ascertain *the legal liability of third parties* (including health insurers) *to pay for care and service* available under the plan, including—

\*\*\*\*

(B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual . . . the State or local agency will seek reimbursement for such assistance *to the extent of such legal liability.*

*Id.* (emphasis added). This Court in *Payne* correctly read the federal statute to require the State "to take measures to determine the legal

liability of third parties and to seek reimbursement from them." *Payne* at 676. However, the federal statute does not require the State to seek reimbursement for a certain amount, or percentage, of a recipient's recovery. See *Smith v. Alabama Medicaid Agency*, 461 So.2d 817, 820 (Ala. Civ. App. 1984) (holding that 42 U.S.C. § 1396(a)(25) does not "specifically require or even suggest 100% recovery"). We read the statute here as requiring reimbursement only to the extent of the third party's legal liability for injuries resulting in "care and service" paid by Medicaid. The federal statute specifies that the legal liability for which the State should seek reimbursement is "the legal liability . . . to pay for care and services." 42 U.S.C.A. § 1396(a)(25)(A).

[4] Although we conclude that N.C. Gen. Stat. § 108A-57 (a) limits DMA's subrogation rights to the injury for which the beneficiary received third-party recovery, we also conclude that the trial court's findings here regarding causation are not supported by competent evidence. The court found the following:

> 7. The Court finds that Michelle Morland suffered injury at birth from a delay in treating her respiratory distress and this comprises the major portion of her existing claim. Michelle Morland received treatment at Grace Hospital for these injuries
>
> * * *
>
> 12. Of the full Medicaid lien for funds expended for the minor, $66,666.66, the Plaintiff contends, and the Court agrees and so finds, that only $8,054.01 is causally related to Defendants [sic] alleged negligence.

However, our careful review of the record reveals no competent evidence to support these findings. The deposition testimony provided in the record establishes that defendants' alleged negligence did not cause plaintiff's cerebral palsy but does not address what other injury, if any, was caused by defendants' actions, nor does it establish that there was any negligence. In the consent judgment and order approving settlement, both the plaintiff and defendant Grace Hospital consented to the following finding of fact:

> 2. This action involves the alleged medical negligence of Defendants which are alleged to have caused permanent physical and psychological injury to Michelle Lynn Morland that has necessitated medical care and treatment, and which, the Plaintiff alleges, will require medical care and treatment for the remainder

**EZELL v. GRACE HOSP., INC.**

[175 N.C. App. 56 (2005)]

of Michelle Lynn Morland's life. *The Defendants have denied these allegations.*

(emphasis added). Although plaintiff asserted a causal connection between the alleged negligence and Medicaid payments of $8,054.01, in its petition for judicial approval of the settlement, no evidence of record supports this contention. Accordingly, we vacate and remand for further proceedings, and specifically for new findings, if any, regarding what proceeds plaintiff obtained "by reason of injury or death," and thus, what portion of plaintiff's award are subject to DMA's right of subrogation.

[5] Appellant also contends that the trial court committed reversible error in presuming that the proceeds were the property of the plaintiff. N.C. Gen. Stat. § 108A-59 provides that, as a condition of Medicaid eligibility, a Medicaid recipient must assign to the State "the right to third party benefits, contractual or otherwise, to which he may be entitled." However, the trial court acknowledged DMA's right to recovery by subrogation and made no finding or conclusion that the proceeds were the "property of the plaintiff." Because we conclude that the court did not apply such a presumption, we overrule this assignment of error.

[6] Finally, appellants argue that the trial court committed reversible error in its failure to follow public policy. Appellants assert that Medicaid was intended to be the payor of last resort and that the subrogation statutes are designed to replenish Medicaid funds when a recipient recovers from a tortfeasor. We do not disagree that these policy considerations underlie the subrogation statutes, however, as discussed, we conclude that the statute requires that DMA's subrogation rights be limited to proceeds obtained "by reason of injury."

For the reasons discussed above, we vacate the court's order and remand for further findings in accordance with this opinion.

Vacated and remanded.

Judge WYNN concurs.

Judge STEELMAN concurs in part and dissents in part.

STEELMAN, Judge concurring in part and dissenting in part.

I concur in those portions of the majority's opinion dealing with equitable subrogation and holding that the trial court did not apply a

presumption that the settlement proceeds were the property of plaintiff. However, I must respectfully dissent as to the remainder of the opinion.

In *Cates v. Wilson*, our Supreme Court stated, "North Carolina law entitles the state to full reimbursement for any Medicaid payments made on a plaintiff's behalf in the event the plaintiff recovers an award for damages." 321 N.C. 1, 6, 361 S.E.2d 734, 738 (1987). In *Campbell v. N.C. Dep't of Human Res.*, this Court held it was irrelevant whether a settlement compensated a plaintiff for medical expenses because "N.C. Gen. Stat. § 108A-57(a) does not restrict defendant's right of subrogation to a beneficiary's right of recovery only for medical expenses." 153 N.C. App. 305, 307, 569 S.E.2d 670, 672 (2002). The applicable portion of the statute dealing with the scope of DMA's right of subrogation reads as follows:

> Notwithstanding any other provisions of the law, to the extent of payments under this Part, the State, or the county providing medical assistance benefits, shall be subrogated to **all rights of recovery, contractual or otherwise**, of the beneficiary of this assistance, or of the beneficiary's personal representative, heirs, or the administrator or executor of the estate, against any person. . . .

N.C. Gen. Stat. § 108A-57(a) (2005) (emphasis added).

The above language contemplates a broad right of subrogation, which is indicated by the reference to "all rights of recovery." Subrogation is not limited to tort recovery, as the statute expressly covers contractual rights or "otherwise." *See State v. Shade*, 115 N.C. 757, 759, 20 S.E. 537, 537 (1894) (noting that when the words "or otherwise," follows an explicit example in a statute, the legislature intends to include every other manner of fulfilling the purpose of the statute, for example here, recovery, no matter what might be the attendant circumstances). The causation language discussed by the majority is from the portion of the statute dealing with the duty of a plaintiff's attorney to distribute settlement proceeds to DMA, not from the portion of the statute defining the scope of DMA's right of subrogation, which is set forth *verbatim* above. The punctuation of the statute gives further credence to this interpretation. The provisions in the statute are set apart by periods, not commas or semicolons. This indicates their separateness. *See Stephens Co. v. Lisk*, 240 N.C. 289, 294, 82 S.E.2d 99, 102 (1954) ("There is no reason why

**EZELL v. GRACE HOSP., INC.**

[175 N.C. App. 56 (2005)]

punctuation, which is intended to and does assist in making clear and plain all things else in the English language, should be rejected in the case of interpretation of statutes") (citations and internal quotation marks omitted). In light of these principles of statutory construction, I do not read the scope of DMA's right of subrogation as narrowly as the majority.

By remanding this matter to the trial court, the majority is expressly authorizing the trial court to find that if there is not a "causal connection" between an actual injury suffered by plaintiff as a result of Dr. Whalley's medical negligence and the medical bills paid by DMA, the trial court can reduce the amount of DMA's lien below the one-third provided for in N.C. Gen. Stat. § 108A-57(a) and this state's prior case law.

I agree with the majority that no DMA lien would attach to proceeds of a settlement from an automobile accident for Medicaid payments for unrelated cancer treatments. However, that is not the case before this Court.

Plaintiff's complaint alleged:

27. That as a direct and proximate result of the deviations of the standard of care from and by Defendant Whalley recited herein, Michelle Morland suffered extensive, severe and permanent neurologic and physical damage, including cerebral palsy, which has been directly associated with the Defendant's negligence.

The basis of the suit was a single claim for medical negligence resulting in plaintiff suffering cerebral palsy, a catastrophic condition. The $100,000.00 settlement with Dr. Whalley is a direct result of that lawsuit. This conclusion is unaltered by the fact that during discovery plaintiff realized Dr. Whalley was not as negligent as was originally believed. The settlement with Dr. Whalley was for a single lump-sum of $100,000.00.

Our cases have consistently rejected attempts by plaintiffs to characterize portions of settlements as being for medical bills or for pain and suffering in order to circumvent DMA's statutory lien. *See Campbell,* 153 N.C. App. 305, 569 S.E.2d 670; *Payne v. N.C. Dept. of Human Resources,* 126 N.C. App. 672, 486 S.E.2d 469, *disc. review denied,* 347 N.C. 269, 493 S.E.2d 656 (1997). The majority would resurrect this practice through a very narrow reading of DMA's subrogation right.

**IN RE J.A.A. & S.A.A.**

[175 N.C. App. 66 (2005)]

This Court's decision in *Payne*, 126 N.C. App. 672, 486 S.E.2d 469, provides guidance on this issue. In *Payne*, DMA had a statutory lien in the amount of $138,198.53. The plaintiff settled his claim for one million dollars, allocated $45,000 of this amount for medical bills, and asserted that DMA was only entitled to one-third of that amount. This Court ordered that DMA was entitled to recover the full amount of its lien of $138,198.53 from the plaintiff. *Id.* at 677, 486 S.E.2d at 471.

*Payne* highlights the problem which arises if the courts allow a plaintiff to characterize the nature of the settlement proceeds, whether by denominating them for medical bills or not for medical bills, as was the case in *Payne*, or causally related to the third-party recovery as posited by the majority in this case. Both devices are designed to circumvent DMA's statutory right of subrogation and to place more of the recovery in the hands of the plaintiff. However sympathetic one may be to the plaintiff's plight in this case, such a result is contrary to the law of this state.

DMA's right of subrogation under N.C. Gen. Stat. § 108A-57(a) is broad rather than narrow. Even assuming the majority's narrow causation test is proper, any causal connection required for purposes of this statute was satisfied when plaintiff obtained a settlement as a direct result of filing the medical negligence action against Dr. Whalley.

I would hold that DMA is subrogated to the entire amount of the $100,000.00 settlement and is entitled to receive one-third of that amount as partial payment of its $86,540.92 lien.

---

IN RE: J.A.A. & S.A.A.