KATELYN ANDREWS, A MINOR, THROUGH HER GUARDIAN AD LITEM, DAVID ANDREWS AND DAVID ANDREWS AND ANDREA ANDREWS, INDIVIDUALLY, PLAINTIFFS v. VANESSA P. HAYGOOD, M.D., INDIVIDUALLY, AND CENTRAL CAROLINA OBSTETRICS AND GYNECOLOGY, P.A., A NORTH CAROLINA CORPORATION, THE WOMEN'S HOSPITAL OF GREENSBORO, A NORTH CAROLINA NOT FOR PROFIT CORPORATION AND KIM RICKEY, RN, INDIVIDUALLY, AND JENNIFER DALEY, INDIVIDUALLY, DEFENDANTS v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE, INTERVENOR

No. COA06-1670

(Filed 15 January 2008)

## 1. Public Assistance— Medicaid reimbursement from settlement account—immaterial settlement might be attributed to something other than medical damages

The trial court did not err in a medical malpractice case by granting the North Carolina Division of Medical Assistance's (DMA) motion for reimbursement from the pertinent settlement account, resulting from injuries of a Medicaid recipient received at birth, and by ordering the trustee pay the requested amount of $1,046,681.94 for medical services subject to the one-third statutory limitation under N.C.G.S. § 108A-57(a) if applicable, because: (1) it was immaterial that some of plaintiffs' settlement funds might have been attributed to something other than medical damages such as pain and suffering; and (2) our Supreme Court's decision in *Ezell*, 360 N.C. 529 (2006), is controlling instead of the United States Supreme Court's decision in *Ahlborn*, 547 U.S. 268 (2006), since the U.S. Supreme Court was interpreting an Arkansas statute; the *Ezell* opinion was handed down after the *Ahlborn* opinion; our Supreme Court denied a petition for rehearing filed in *Ezell* which set out arguments based on *Ahlborn*; the construction of the statutes of a state by its highest courts is to be regarded as determining their meaning; and the Court of Appeals has no authority to overrule decisions of our Supreme Court.

## 2. Public Assistance— Medicaid reimbursement—characterization of state and/or county's interest in settlement account as lien instead of claim

The trial court did not err in a medical malpractice and negligent infliction of emotional distress case by characterizing the North Carolina Division of Medical Assistance's (DMA) interest in the settlement account as a lien as opposed to a claim, because:

(1) several of our Court of Appeals' decisions have referred to the state's and or county's interest under N.C.G.S. § 108-57 in a settlement or judgment as a lien; and (2) the statute itself uses the phrase "medical lien" as an alternative way of describing third parties' medical subrogation rights.

### 3. Public Assistance— medicaid reimbursement—settlement account—DMA as beneficary rather than claimant— absence of prejudice

Although the trial court erred in a medical malpractice and negligent infliction of emotional distress case by determining the North Carolina Division of Medical Assistance (DMA) is a beneficiary of the settlement account as opposed to a claimant, the trustee failed to establish how such a technical error would require a remand.

Judge WYNN dissenting.

Appeal by trustee from an order entered 27 July 2006 by Judge Steve A. Balog in Alamance County Superior Court. Heard in the Court of Appeals 9 October 2007.

*Craig, Brawley, Liipfert & Walker, LLP, by Brent Stephens, for plaintiff-appellees.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Timothy P. Lehan; Patterson, Dilthey, Clay, Bryson & Anderson, LLP, by Robert M. Clay and Charles George, for defendant-appellees.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Susannah P. Holloway, for intervenor-appellee.*

*Wishart Norris Henninger & Pittman, P.A., by Pamela S. Duffy and Molly A. Orndorff, for trustee-appellant Charlie D. Brown.*

HUNTER, Judge.

Katelyn Andrews ("Katelyn") was injured at birth. Katelyn, through her Guardian ad Litem, brought suit against her doctors and the hospital at which she was delivered for medical malpractice. Katelyn's parents also brought suit against the same parties and on the same allegations in their individual capacities, with an additional claim of negligent infliction of emotional distress. Katelyn and her parents ("plaintiffs") eventually entered into settlement agreements

with the parties. After the trial court approved the agreements and established a settlement account, Charlie D. Brown ("trustee") was named trustee and the agreements were made confidential upon the trial court's order.

Katelyn is a North Carolina Medicaid recipient due to the injuries she sustained at birth. The North Carolina Division of Medical Assistance ("DMA") therefore moved to intervene. North Carolina, through the DMA, had paid $1,046,681.94 for her medical services through 10 October 2005. Under N.C. Gen. Stat. § 108A-57 (2005), the DMA moved for reimbursement from the settlement account. The trial court granted DMA's motion and ordered that trustee pay the amount requested by DMA. Trustee now appeals to this Court. After careful consideration, we affirm the ruling of the trial court.

Trustee presents the following issues for this Court's review: (1) whether the trial court erred in concluding that our Supreme Court's decision in *Ezell v. N.C. Dep't of Health & Human Servs.*, 360 N.C. 529, 631 S.E.2d 131 (2006), is controlling and the United States Supreme Court's decision in *Arkansas Dep't of HHS v. Ahlborn*, 547 U.S. 268, 164 L. Ed. 2d 459 (2006), is not;[1] (2) whether the trial court erred in finding that the DMA has a "lien" on the settlement account as opposed to a "claim" on it; and (3) whether the trial court erred in finding that the DMA is a "beneficiary" of the settlement account as opposed to a "claimant" of the account.

Because all of trustee's assignments of error relate to the trial court's conclusions of law, we review those decisions *de novo*.[2] *Medina v. Division of Soc. Servs.*, 165 N.C. App. 502, 505, 598 S.E.2d 707, 709 (2004). We now turn to trustee's arguments.

·I.

[1] This case involves the application of N.C. Gen. Stat. §§ 108A-57 and 59(a) (2005). Under section 59(a), Medicaid recipients, by accepting medical assistance, are "deemed to have made an assignment to

---

1. Trustee also raises the issue of whether the trial court erred in finding that no further hearing or evidence would be necessary to determine the amount to be paid to DMA and, another claimant, United Health Care. Addressing those issues, however, is dependent upon this Court finding in favor of trustee on issue one.

2. Some of the challenged conclusions by the trial court are labeled as "findings of fact" but are actually legal conclusions. Accordingly, we treat them as conclusions of law. *See Zimmerman v. Appalachian State Univ.*, 149 N.C. App. 121, 131, 560 S.E.2d 374, 380 (2002) (conclusions of law are reviewed *de novo* regardless of how they are labeled).

the State of the right to third party benefits[.]" In other words, the state and county providing the medical benefits are "subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assistance[.]" N.C. Gen. Stat. § 108A-57(a). The state is entitled to receive funds from third party benefits up to the amount of the Medicaid payments so long as the payment does not exceed "one-third of the gross amount obtained[.]" N.C. Gen. Stat. § 108A-57(a). Trustee argues that the DMA is only entitled to the settlement funds that Katelyn received as compensation for medical expenses and not, for example, any settlement funds paid by the third parties due to her pain and suffering. We disagree.

Our Supreme Court definitively addressed this issue in *Ezell*, which is binding on this Court. *Mahoney v. Ronnie's Road Service*, 122 N.C. App. 150, 153, 468 S.E.2d 279, 281 (1996) ("it is elementary that we are bound by the rulings of our Supreme Court").

Judge Steelman's dissent in *Ezell* was adopted *per curiam* by our Supreme Court. *Ezell*, 360 N.C. 529, 631 S.E.2d 131. In that case, Judge Steelman stated that "[o]ur cases have consistently rejected attempts by plaintiffs to characterize portions of settlements as being for medical bills or for pain and suffering in order to circumvent DMA's statutory lien." *Ezell v. Grace Hosp., Inc.*, 175 N.C. App. 56, 65, 623 S.E.2d 79, 85 (2005) (Steelman, J., dissenting), *dissent adopted per curiam*, 360 N.C. 529, 631 S.E.2d 131. Moreover, the "DMA's right of subrogation under N.C. Gen. Stat. § 108A-57(a) is broad rather than narrow." *Id.* at 66, 623 S.E.2d at 85. In the *Ezell* dissent, which was adopted by the Supreme Court, Judge Steelman concluded that the DMA was subrogated to the entire amount of the settlement, subject only to the one-third limitation found in N.C. Gen. Stat. § 108A-57(a), irrespective of whether some of the settlement amount was intended to account for pain and suffering and not medical damages. *Id.* Such being the case here, it is immaterial that some of plaintiffs' settlement funds might have been attributed to something other than medical damages. Accordingly, the trial court did not err in subrogating the settlements, subject to the one-third statutory limitation, if applicable, to the DMA.

Trustee asks this Court to apply a recent United States Supreme Court decision to interpret our state statutes. In that case, the United States Supreme Court determined that a state's ability to recover its Medicaid lien was limited to that pro-rata portion of the settlement representing compensation for past medical expenses only, not the

entire settlement. *Ahlborn*, 547 U.S. at ——, 164 L. Ed. 2d at 474. The Court, however, was interpreting an Arkansas statute, not a North Carolina statute. The North Carolina Supreme Court opinion in *Ezell* was handed down on 30 June 2006, which was after the United States Supreme Court's opinion in *Ahlborn*, decided on 1 May 2006. Thereafter, a petition for rehearing was filed with our Supreme Court in *Ezell* on 4 August 2006. Our Supreme Court denied the petition, which set out arguments based on *Ahlborn*, on 14 December 2006. *Ezell*, 361 N.C. 180, 641 S.E.2d 4 (2006) (unpublished). Although we recognize that the Arkansas statute discussed in *Ahlborn* is similar to the one at issue here, it is well settled that " 'the construction of the statutes of a state by its highest courts is to be regarded as determining their meaning[.]' " *Fibre Co. v. Cozad*, 183 N.C. 601, 607, 112 S.E. 810, 813 (1922) (quoting *Carroll Co. v. U. S.*, 85 U.S. 71, 21 L. Ed. 771 (1873)). "Moreover, this Court has no authority to overrule decisions of our Supreme Court and we have the responsibility to follow those decisions 'until otherwise ordered by . . . [our] Supreme Court.' " *Dunn v. Pate*, 106 N.C. App. 56, 60, 415 S.E.2d 102, 104 (1992) (citation omitted), *reversed on other grounds*, 334 N.C. 115, 431 S.E.2d 178 (1993). That not being present here, trustee's arguments as to this issue are rejected.[3]

## II.

**[2]** Trustee next argues that the trial court erred in characterizing the DMA's interest in the settlement account as a "lien" as opposed to a "claim." We disagree.

Several of this Court's decisions have referred to the state's and/or county's interest under N.C. Gen. Stat. § 108A-57 in a settlement or judgment as a "lien." *See Campbell v. N.C. Dep't of Human Res.*, 153 N.C. App. 305, 569 S.E.2d 670 (2002); *Payne v. N.C. Dept. of Human Resources*, 126 N.C. App. 672, 486 S.E.2d 469 (1997); *N.C. Dept. of Human Resources v. Weaver*, 121 N.C. App. 517, 466 S.E.2d 717 (1996). Moreover, the statute itself uses the phrase "medical lien" as an alternative way of describing third parties' "medical subrogation rights[.]" N.C. Gen. Stat. § 108A-57(a). Accordingly, trustee's assignments of error as to this issue are rejected.

---

3. Also rejected is trustee's argument that the trial court erred in denying his motion for further hearing as the trial court was under no obligation to make an accounting of those funds in the settlement account attributable to medical expenses. For the same reason, we also reject trustee's arguments that the trial court erred by not addressing any potential claims that United Healthcare could have against the settlement account.

ANDREWS v. HAYGOOD

[188 N.C. App. 244 (2008)]

III.

**[3]** Trustee next argues that the trial court erred in determining that the DMA is a "beneficiary" of the settlement account as opposed to a "claimant." We agree that the trial court improperly characterized the DMA as a beneficiary but do not find the error to warrant a remand.

"A beneficiary is 'a person who receives benefits[;]' while the definition of benefit includes 'payment made under insurance, social security, welfare, etc.' " *Campbell*, 153 N.C. App. at 307, 569 S.E.2d at 672 (quoting Oxford Encyclopedic English Dictionary 132 (Judy Pearsall and Bill Trumble, eds., 1995)). Accordingly, the "beneficiary" under N.C. Gen. Stat. § 108A-57(a) is the person receiving the Medicaid benefits, be it actual funds or the medical services that have been paid by DMA on behalf of the recipient. *Id.* In the instant case, the DMA was paying plaintiffs, the beneficiaries. Thus the DMA is not the beneficiary, but a claimant.

It is well settled, however, that "verdicts and judgments will not be set aside for harmless error, or for mere error and no more." *In re Ross*, 182 N.C. 477, 478, 109 S.E. 365, 365 (1921). Instead, trustee must show "not only that the ruling complained of was erroneous, but that it was material and prejudicial, amounting to a denial of some substantial right." *Id.* The rationale being that "appellate courts will not encourage litigation by reversing judgments for slight error, or for stated objections, which could not have prejudiced the rights of appellant in any material way." *Id.* Trustee has failed to establish how such a technical error would require a remand. Accordingly, trustee's arguments as to this issue are rejected.

IV.

In summary, we hold that the trial court did not err in subrogating the settlements, subject to the one-third statutory limitation, if applicable, to the DMA. We also hold that the trial court did not err in characterizing the DMA's claim on the settlement account as a "lien." Finally, we conclude that a remand would not be appropriate in this case even though the trial court incorrectly labeled the DMA as a "beneficiary" of the settlement accounts.

Affirmed.

Judge WYNN dissents in a separate opinion.

Judge JACKSON concurs.

**ANDREWS v. HAYGOOD**

[188 N.C. App. 244 (2008)]

WYNN, Judge, dissenting.

Because I find that our Supreme Court has not yet squarely answered the question presented to us by this case, I certify by dissent for a decision on the issue of whether the amount of the State Division of Medical Assistance's subrogation claim on a Medicaid recipient's settlement is controlled by the United States Supreme Court decision in *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268, 164 L. Ed. 2d 459 (2006).

Preliminarily, I observe that our state Supreme Court's reversal of this Court's decision in *Ezell v. Grace Hospital, Inc.* was explained only as "[f]or the reasons stated in the dissenting opinion."[4] At the time of this Court's dissenting opinion, the *Ahlborn* decision had not yet been handed down by the United States Supreme Court. As such, the dissenting opinion adopted by our Supreme Court neither considered nor mentioned *Ahlborn*. Moreover, immediately after the issuance of the *Ahlborn* decision, our Supreme Court declined to grant a rehearing in *Ezell* with the one-word reply, "Denied." In denying the plaintiff's petition for rehearing, the *Ahlborn* decision was again neither addressed nor mentioned. Thus, *Ezell* offers no guidance for determining the inapplicability of the *Ahlborn* holding to this case, and I cannot discern a basis for why the United States Supreme Court decision should not control the outcome.

Accordingly, because the North Carolina statute at issue in this case is materially indistinguishable from the Arkansas statutory provisions found by a unanimous United States Supreme Court in *Ahlborn* to be preempted by federal law, I respectfully dissent.

The relevant North Carolina statutes provide that, by accepting medical assistance from the State, "the recipient shall be deemed to have made an assignment to the State of the right to third party benefits, contractual or otherwise, to which he may be entitled." N.C. Gen. Stat. § 108A-59(a) (2005). In turn, "to the extent of payments under [the Medical Assistance Program], the State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assistance . . . against any person[,]" although "the amount paid to the Department shall not exceed one-third of the gross amount obtained or recovered." *Id.* § 108A-57(a).

---

4. *Ezell v. Grace Hospital, Inc.*, 175 N.C. App. 56, 623 S.E.2d 79 (2005), *rev'd per curiam*, 360 N.C. 529, 631 S.E.2d 131, *reh'g denied*, 361 N.C. 180, 641 S.E.2d 4 (2006).

Likewise, the Arkansas statute at issue in the *Ahlborn* case gave that state the "right to recover from the person the cost of benefits so provided[,]" when medical assistance benefits were provided "because of injury, disease, or disability for which another person is liable[.]" Ark. Code Ann. § 20-77-301(a) (2005). Further, "any settlement, judgment, or award obtained [by the individual] is subject to the division's claim for reimbursement of the benefits provided to the recipient under the medical assistance program." *Id.* § 20-77-302(a). After paying attorney's fees and expenses, the Arkansas Department of Human Services (ADHS) would "receive an amount sufficient to reimburse the department the full amount of benefits paid on behalf of the recipient under the medical assistance program[,]" with "[t]he remainder [to] be awarded to the medical assistance recipient." *Id.* § 20-77-302(b). The assignment was considered a condition of Medicaid benefits and an automatic statutory lien on any settlement with a third party. *Id.* § 20-77-307.

The principal difference between the North Carolina and Arkansas statutes is that the latter provides no ceiling or limit on the amount of recovery allowed to the ADHS; rather, the statute explicitly stated that ADHS was entitled to recover the full amount of the benefits paid to the recipient. *Id.* § 20-77-302(b). North Carolina, by contrast, allows DMA to take at most one-third of the gross amount of the settlement, regardless of whether that fully satisfies the amount paid in medical benefits. N.C. Gen. Stat. § 108A-57(a). Nevertheless, the basic thrust of the statutes is the same: under both, the State has an automatic lien on the full amount of any settlement with a third party reached by a Medicaid settlement, regardless of what expenses or damages those funds are designated to compensate.

In *Ahlborn*, the United States Supreme Court focused on that specific issue, stating, "We must decide whether ADHS can lay claim to more than the portion of [the recipient's] settlement that represents medical expenses." 547 U.S. at 280, 164 L. Ed. 2d at 471. The holding of the Court was that ADHS could not:

The text of the federal third-party liability provisions suggests not; it focuses on recovery of payments for medical care. Medicaid recipients must, as a condition of eligibility, "assign the State any rights . . . *to payment for medical care* from any third party," 42 U.S.C. § 1396k(a)(1)(A) (emphasis added), not rights to payment for, for example, lost wages.

*Id.* Even more explicitly:

[A]s explained above, under the federal statute the State's assigned rights extend only to recovery of payments for medical care. Accordingly, what § 1396k(b) requires is that the State be paid first out of any damages representing payments for medical care before the recipient can recover any of her own costs for medical care.

*Id.* at 281, 164 L. Ed. 2d at 472.

Moreover, the United States Supreme Court found that the Arkansas statute conflicted with the federal statute's "express limits on the State's powers to pursue recovery of funds it paid on the recipient's behalf[,]" namely, the anti-lien provisions of 42 U.S.C. §§ 1396a(a)(18) and 1396p. *Id.* at 283, 164 L. Ed. 2d at 473. According to the Supreme Court:

There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) and 1396k(a). And we assume, as do the parties, that the State can also demand as a condition of Medicaid eligibility that the recipient "assign" in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. . . . But that does not mean that the State can force an assignment of, or place a lien on, any other portion of [the recipient's] property. *As explained above, the exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies.*

*Id.* at 284-85, 164 L. Ed. 2d at 474 (citation omitted and emphasis added). Thus, the Arkansas statute—and likewise, our North Carolina statute—conflicts with federal Medicaid statutes by allowing the State to recover from a recipient settlement funds that were for purposes other than medical expenses.

In the instant case, Katelyn and her parents brought suit against the hospital, doctors, and nurses charged with her birth for damages including, but not limited to, mental and physical pain and anguish, severe and permanent injury, past medical expenses paid by Medicaid, her insurance company, and her parents, future medical expenses, loss of future earnings, disfigurement and loss of normal use of her body, her parents' expenses for education and life care, and her parents' emotional distress and derivative claims. These claims

were settled among all parties, with proceeds held in a single account and no allocations made as to specific amounts for which particular claim. Although the settlement is in excess of three times the amount of medical expenses paid by DMA, such that DMA could receive full reimbursement without violating the provisions of N.C. Gen. Stat. § 108A-57(a), the holding of *Ahlborn* dictates that the trial court must hold an evidentiary hearing as to what portion of the settlement is designated for medical expenses prior to determination of the amount of repayment to be made to DMA.

Accordingly, I respectfully dissent.