AGEE, Circuit Judge,
concurring in part, dissenting in part, and concurring in the judgment:
I join the majority opinion except for Section IV(A) (and related references), which concludes that the relevant North Carolina Medicaid statutes, N.C. Gen.Stat. § 108A-59(a) (“the assignment statute”) and N.C. Gen.Stat. § 108A-57(a) (“the subrogation statute”) abrogate the common law of North Carolina under which a minor has no cause of action for recovery of medical expenses incurred during minority. Accordingly, I respectfully dissent from that portion of the majority opinion and write separately because nothing in either the assignment statute or the abrogation statute suggest that the General Assembly of North Carolina intended to extend or create such a cause of action. Furthermore, I find no support in the decided cases of the North Carolina appellate courts holding that state’s legislature abrogated the otherwise applicable common law rule. Consequently, I would hold the common law rule survives the enactment of North Carolina’s Medicaid statutes.[1] Nonetheless, for the reasons discussed below, I would vacate and remand the judgment of the district court.
Unless modified by statute, the common law is the law of North Carolina, as in many states. See State v. Vance, 328 N.C. 613, 403 S.E.2d 495, 498 (1991); N.C. Gen. Stat. § 4-1 (“All such parts of the common law ... [as are] not abrogated, repealed, or ... obsolete, are hereby declared to be in full force within this State.”). “When the [North Carolina] General Assembly legislates in respect to the subject matter of a common law rule, the statute supplants the common law rule in regard to that matter.” State v. Green, 124 N.C.App. 269, 477 S.E.2d 182, 187 (1996) (citing McMichael v. Proctor, 243 N.C. *313 479, 91 S.E.2d 231, 234 (1956)). However, the common law controls unless the legislature expressly abrogates it. See In re Thompson, 74 N.C.App. 329, 327 S.E.2d 908, 909 (1985); see also Lowe v. Harris, 112 N.C. 472, 17 S.E. 539, 544 (1893) (Shepherd, C.J., concurring) (“[I]f the legislature intended to abrogate these [common law] rules, in whole or in part, it should have expressed such intention in the clearest and most unmistakable manner.”); Price v. Edwards, 178 N.C. 493, 101 S.E. 33, 36 (1919) (“[Statutes in derogation of common law ... are construed strictly.”).[2]
Under the common law of North Carolina, a minor has no cause of action against a tortfeasor for medical expenses incurred during minority. See Vaughan v. Moore, 89 N.C.App. 566, 366 S.E.2d 518, 520 (1988). Rather, the right to recover for medical expenses lies with the parents, but the minor (through his or her proper representative) may recover for other damages, such as pain and suffering or loss of future income. Id. (citing Ellington v. Bradford, 242 N.C. 159, 86 S.E.2d 925, 926 (1955)). Applying that principle to this case, it would appear that E.M.A. could not recover against her tortfeasor for the incurred medical expenses. As a consequence, the principles enunciated in Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), would insulate E.M.A.’s allotted portion of the settlement proceeds from the State’s lien unless that portion did in fact include medical expense reimbursements.
Notwithstanding North Carolina common law, however, the majority opinion, relying upon the “plain language” of the subrogation statute and the assignment statute, as well as pre-Ahlborn authority, allows the State to encumber E.M.A.’s portion of settlement proceeds. I do not agree the statutes at issue here lead to that result.
The assignment statute states that “[notwithstanding any other provisions of the law, by accepting medical assistance, the recipient shall be deemed to have made an assignment to the State of the right to third party benefits ... to which he may be entitled.” N.C. Gen.Stat. § 108A-59(a). The subrogation statute uses similar terms to express that: “[notwithstanding any other provisions of the law, to the extent of payments under this Part, the State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assistance....” Id.
With particular emphasis on the “[notwithstanding any other provisions of the law,” language, the majority opinion concludes that these statutes “by their plain language abrogate the common law rule that a minor cannot recover for medical expenses.” Maj. Op. at 305. Neither statute, however, conflicts with the common law rule at issue here by its plain terms or otherwise.
The assignment statute specifically limits the “rights” assigned: “the recipient [of Medicaid benefits] shall be deemed to have made an assignment to the state of the right to third party benefits ... to which he may be entitled.” (Emphasis added.) By its express language, this statute does not purport to enlarge the preexisting rights of a beneficiary of Medicaid benefits, including those possessed by minors. *314 A plain reading of the statute instead leads to the conclusion that, to the extent a beneficiary of Medicaid benefits has a claim to third party benefits, that beneficiary by operation of law assigns those rights to the state. The statute could have easily been written to create a new cause of action in the Medicaid beneficiary, but it was not. Rather, the statute speaks of the assignment only of the rights, if any, that already exist in the beneficiary.
In this regard, E.D.B. ex rel. D.B. v. Clair, 605 Pa. 73, 987 A.2d 681 (2009), cited ante at 306-07 n. 9, is instructive. In that case, the Supreme Court of Pennsylvania found, pursuant to its state’s Fraud and Abuse Control Act (which operates, like the North Carolina Medicaid statutes at issue here, to regulate the state’s right of assignment of benefits) “a Medicaid beneficiary has a cause of action against his or her tortfeasor to recover and reimburse [the state] for Medicaid benefits received during the beneficiary’s minority.” Id. at 691.[3] The Pennsylvania statutes at issue did not expressly provide for a cause of action for a minor tort-victim for medical expenses, but rather, Pennsylvania’s highest court found that the legislature intended to create such a cause of action in order to effectuate its goal that “the entirety of a beneficiary’s settlement would be subject to [the state’s] claim.” Id. at 690. Although that goal was unattainable after Ahlborn, the court noted that “nothing in Ahlborn affects, negates, weakens, or calls into question the reasoning ... as to the General Assembly’s intent with regard to the filing of claims by beneficiaries for Medicaid expenditures incurred during their minority.” Id. at 691 (emphasis in original). The key here, in contradistinction from the statutes or court decisions in North Carolina, is that the Pennsylvania Supreme Court specifically concluded a cause of action existed in a minor, therefore giving the minor a chose to assign.
In stark contrast, North Carolina’s Court of Appeals has rejected the notion that the statutes at issue create a cause of action in a minor for medical expenses, even where that minor is a beneficiary of Medicaid benefits. See Campbell v. N.C. Dep’t of Human Res., 153 N.C.App. 305, 569 S.E.2d 670, 672 (2002) (stating that because, under North Carolina common law, a minor has no cause of action for medical expenses, “the settlement money which [the minor] plaintiff received was not recompense for medical expenses”). Campbell thus acknowledged that, even after the enactment of the North Carolina Medicaid statutes, a minor lacked a cause of action for medical expenses, ruling instead that the State was nonetheless entitled to the plaintiffs settlement proceeds on other grounds (although this rationale has since been nullified by Ahlborn).
The same is true of North Carolina’s subrogation statute which requires that “to the extent of [Medicaid] payments ..., the State, ... shall be subrogated to all rights of recovery ... of the beneficiary of this assistancef.]” N.C. Gen. Stat. § 108A-57(a) (emphasis added). Again, the statute speaks only of the existing rights of the beneficiary, and simply does not create any new rights to a cause of action in a minor. E.M.A. cannot assign, nor can the State be subrogated to, rights that she does not possess.
I am also not persuaded that Ezell v. Grace Hospital, Inc., 175 N.C.App. 56, 623 S.E.2d 79 (2005), rev’d per curiam for the *315 reasons stated in the dissenting opinion, 360 N.C. 529, 631 S.E.2d 131 (2006), is applicable to E.M.A.’s argument. That case dealt with the issue of whether common law equitable limitations on recovery could be applied to reduce the State’s recovery of third-party benefits paid to a Medicaid beneficiary. See Ezell, 623 S.E.2d at 81. Ezell’s holding that the subrogation statute abrogates common law equitable recovery principles is simply a recognition that application of the common law yields a different result than application of the statutory language. As explained above, that is not the case with the common law rule limiting the minor’s right to recovery for medical expenses. Ezell says nothing about changing the North Carolina common law rule regarding the cause of action for recovery of a minor’s medical expenses.
The majority opinion, however, relies on Campbell as additional support for its holding that the common law rule is abrogated. In that case, the North Carolina Court of Appeals considered and rejected a claim similar to that raised by E.M.A. Ahlborn, however, which was decided four years after Campbell, has clearly eviscerated the rationale of Campbell such that its holding should not be entitled precedential weight.
In Campbell, the plaintiff, who was a minor at the time he was injured by a third-party tortfeasor and received Medicaid benefits, claimed that the State had no right of subrogation because he lacked a cause of action under North Carolina law for medical expenses. While agreeing with the premise that, at common law, a minor may not recover for medical expenses incurred during minority, the North Carolina Court of Appeals reasoned that “[N.C. Gen.Stat.1 § 108A-57(a) does not restrict [the State’s] right of subrogation to a beneficiary’s right of recovery only for medical expenses.” 569 S.E.2d at 672. Because North Carolina’s Medicaid statutes allowed the state to place a lien upon any of the plaintiffs settlement proceeds, regardless of whether they were for medical expenses, the plaintiffs right (or lack thereof) to receive medical expenses in tort was no barrier to the State’s lien. The Campbell court relied on prior North Carolina cases for the proposition that “to the extent of Medicaid payments under [the] Medical Assistance Program” the State is “subrogated to all rights of recovery of the beneficiary of medical assistance.” Id. (citing and quoting N.C. Dept. of H.R. v. Weaver, 121 N.C.App. 517, 466 S.E.2d 717, 719 (1996), (emphasis and internal alterations omitted)).
Campbell also relied heavily on Payne v. North Carolina Department of Human Resources, 126 N.C.App. 672, 486 S.E.2d 469 (1997), a case in which the North Carolina Court of Appeals considered and rejected a challenge to North Carolina’s Medicaid subrogation scheme based on the federal anti-lien statute found at 42 U.S.C. § 1396p(a)(1). Campbell described the Payne holding as follows:
Plaintiff [in Payne] argued that [the State’s] subrogation rights extended only to the amount allocated to his mother for medical expenses. This Court disagreed, and held that “by accepting Medicaid benefits, [minor plaintiff] assigned his right to third-party benefits to [the State], and [the State’s] lien vested at that time.”
Campbell, 569 S.E.2d at 672-73.
This reasoning is plainly at odds with Ahlborn’s command that a state Medicaid agency may not seek assignment of “rights to payment for anything other than medical expenses-not lost wages, not pain and *316 suffering, not an inheritance.” Ahlborn, 547 U.S. at 281, 126 S.Ct. 1752.[4]
Accordingly, when the Campbell court opined that “[the State] is entitled to recover the costs of medical treatment provided for a minor, even when the funds received by the minor are not reimbursement for medical expenses[,]” 569 S.E.2d at 672, its rationale conflicts directly with Ahlborn. See 547 U.S. at 282, 126 S.Ct. 1752 (“[T]he State’s assigned rights extend only to recovery of payments for medical care.”). While it is true that most creditors can usually satisfy debts owing to them from any assets of the debtor that the creditor can find, this is not the case in the Medicaid context. Ahlborn and the federal anti-lien statute at 42 U.S.C. § 1896p make clear that a state Medicaid lien can only be levied against those assets received for medical expenses.
There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) and 1396k(a).... To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. But that does not mean that the State can force an assignment of, or place a lien on, any other portion of Ahlborn’s property.
Ahlborn, 547 U.S. at 284-85, 126 S.Ct. 1752 (internal citations omitted) (emphasis added). Campbell, which stands in obvious conflict with that holding, must give way and cannot be a basis upon which to find abrogation of the North Carolina common law rule.
Indeed, the one aspect of Campbell that seems to survive Ahlborn is the acknowledgement of the North Carolina common law that because “a minor, even after reaching majority, may not recover for medical expenses incurred during minority ... the settlement money which plaintiff received was not recompense for medical expenses.” 569 S.E.2d at 672 (internal citation and quotation marks omitted) (emphasis added). That statement of North Carolina law does not rest on a premise that has been rejected by the Supreme Court, and should guide our analysis of E.M.A.’s claim on appeal. It is a recognition that, even in light of North Carolina’s Medicaid statutes, a minor still lacks a cause of action for medical expenses. Accordingly, the argument that the North Carolina Medicaid subrogation and assignment statutes somehow abrogate this right is not an accurate statement of North Carolina law in my view.
I therefore must disagree with the conclusion in the majority opinion that the North Carolina Medicaid statutes “by their plain language” abrogate the common law. Maj. Op. at 305. And, as noted above, no North Carolina appellate court decision, in conformity with Ahlborn, so construes those statutes. To the contrary, the statutes at issue plainly do not conflict with, and nor do they abrogate, the common law rule that minors may not recover for medical expenses in North Carolina.
Nevertheless, while the minor does not have a cause of action for medical expenses, that does not necessarily mean, in an otherwise unallocated settlement, that none of the funds comprising the minor’s share were not in fact representative of medical expenses already incurred or allo *317 cated to a Special Needs Trust (“SNT”) in anticipation of medical expenses to be incurred in the future. A competent advocate for a minor in structuring such a settlement would, knowing the North Carolina common law, attempt to have allocated as much as possible of a fixed settlement to the minor’s share, irrespective of what categories of damages comprise the settlement amount. That allocation would be of little moment to the tortfeasor, whose only interest is in release from liability. The record before the court in the case at bar simply does not allow us to determine whether E.M.A.’s settlement share did include an amount actually represented by the medical expense damages.
The state trial court order approving the settlement does not make the findings necessary to resolve to what extent the Medicaid lien, under Ahlborn, is applicable here. I do not fault the state trial judge as there was (like now) no clear rule by appellate decision or legislative enactment on point. If the matter of medical expense reimbursement was part of the calculation put before the state trial court, and the settlement order stated how an allocation between the parties was determined with the damage elements comprising each share, then the determination as to what could be attached by the Medicaid lien should be straightforward. Such an explicit allocation is not in the record before us, however. It is simply not possible, on this record, to ascertain what elements of damages comprise the respective settlement shares of E.M.A. or her parents. For that reason I agree with the majority that the district court judgment must be vacated and remanded. Should it be determined, on remand, that any portion of E.M.A.’s settlement share was in fact represented by her past medical expenses, then the State’s Medicaid lien could properly attach to that portion under Ahlborn. However, should it be determined that no part of E.M.A.’s share was represented by her past medical expenses, no lien could attach.
On remand, the district court should consider two salient questions:
1. What amount of the settlement was allocated to each party: (a) E.M.A. (acting through her guardian ad litem); and (b) Earl and Sandra Armstrong (E.M.A.’s parents)?
2. What, elements of damage comprise the award each party received? Put another way, were the respective amounts awarded on an ad hoc or arbitrary determination or was there an actual basis for the division between the parties based on the merits of the various elements of damage, such as medical expenses?
Although cases that have approved the default statutory percentage method for allocating settlement proceeds did so partly on the basis to avoid a case-by-case determination of the medical expense portion of settlements, e.g., Andrews v. Haygood, 362 N.C. 599, 669 S.E.2d 310, 314 (2008), I agree with the majority opinion that Ahlbom requires such fact-specific inquiries in a case such as is now before us. Until states develop a specific mechanism for determining the medical expense portion of unallocated settlements, a judicial resolution is the only means by which the Ahlborn principles for application of a Medicaid lien can be established. The Supreme Court seemed to recognize this point in Ahlborn that determining Medicaid lien status on an allocated or unallocated settlement could be “either by obtaining the State’s advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision.” Ahlborn, 547 U.S. at 288, 126 S.Ct. 1752.
I am in agreement with the majority opinion’s conclusion that “[t]he North Carolina statute’s one-third cap on the state’s *318 recovery against a Medicaid recipient’s settlement proceeds does not satisfy Ahlbom insofar as it permits DHHS to assert a lien against settlement proceeds intended (or otherwise properly allocable) to compensate the Medicaid recipient for other claims[.]” Maj. Op. at 307. While I disagree that North Carolina has abrogated its common law rule that minors have no cause of action for medical expenses, I do agree a remand is necessary in order for the district court to determine whether E.M.A. actually received any settlement funds for medical expenses, and if so, how much.
For the foregoing reasons, I respectfully dissent from Section IV(A) (and related references) of the majority opinion, but concur otherwise and concur in the judgment.

. In resolving this difficult question of the interplay between North Carolina's common law and its Medicaid statutes, it would be helpful to seek guidance from that state’s highest court. Unfortunately, unlike the other states in this circuit, North Carolina alone provides no mechanism for us to certify questions of state law to its Supreme Court. See MLC Automotive, LLC v. Town of Southern Pines, 532 F.3d 269, 284 (4th Cir.2008).

. The common law is incorporated into the North Carolina statutory scheme by N.C. Gen. Stat. § 4-1. North Carolina courts abide by the maxim that “repeal by implication is not a favored rule of statutory construction.” State v. Greer, 308 N.C. 515, 302 S.E.2d 774, 777 (1983) (internal quotation marks omitted).

. The court in E.D.B. found such a cause of action in Pennsylvania’s statutes. Its analysis demonstrates, however, that the relevant inquiry is not whether a state had mandated that the minor assign his or her rights to the state, but rather, whether the minor had a recognized right to recover (i.e., a cause of action) and therefore something to assign.

. The fact that, pre-Ahlborn, the Campbell and Payne courts permitted a Medicaid lien regardless of the medical expense portion of tort recovery, combined with the statutory percentage limit, may explain why the particular issue now raised by E.M.A. had not previously been raised or addressed by the North Carolina courts post-Ahlborn.