GRIER G. NEWLIN, ADMINISTRATOR OF THE ESTATE OF WILLIAM HENRY KIMREY, DECEASED v. EDWIN GILL, TREASURER OF THE STATE OF NORTH CAROLINA, THE ESTATE OF THOMAS PRESTON KIMREY, ET AL.

No. 11

(Filed 11 October 1977)

1. **Descent and Distribution § 1.1— determination of intestate succession**

In North Carolina the devolution of property by descent and distribution is entirely within the province of the General Assembly.

2. **Descent and Distribution § 9— succession by collateral kinsmen—limitation**

G.S. 29-15 limits succession of an intestate's estate to collateral kinsmen who are descended from a parent or grandparent of the intestate.

3. **Descent and Distribution § 9— succession by collateral kinsmen—prevention of escheat—effect of statute**

The limitation upon collateral succession to heirs within five degrees of kinship to the intestate contained in G.S. 29-7 is a limitation upon succession by heirs descended from parents or grandparents of the intestate as provided in G.S. 29-15, and the effect of the proviso of G.S. 29-7 is to provide for unlimited succession by collateral kinsmen descended from the intestate's parents or grandparents in the event there are no collateral kinsmen of the fifth degree in such lines of descent.

4. **Escheats— collateral kinsmen—no descendant of intestate's parent or grandparent**

The estate of an intestate escheated where the intestate was survived only by collateral kinsmen who did not descend from the intestate's parents or grandparents.

ON certiorari to review the decision of the Court of Appeals (reported in 32 N.C. App. 392, 232 S.E. 2d 213) which reversed the judgment of *Lupton, J.,* at the 1 June 1976 Session of RANDOLPH County Superior Court.

Plaintiff administrator filed this action for a declaratory judgment on 12 November 1975, seeking instructions as to the distribution of the estate of William Henry Kimrey, deceased.

William H. Kimrey died intestate on 15 March 1975 leaving a net estate in excess of eighty-four thousand dollars ($84,000). He died without a surviving wife, without lineal descendants, and without surviving parents, grandparents or lineal descendants thereof. The closest surviving relative was Thomas P. Kimrey, a grandson of the intestate's great-grandparents and an heir of the fifth degree. Thomas Kimrey died subsequent to the date of the intestate's death and is represented in this action by his executors. With the exception of the defendant Treasurer, the remaining defendants are also descended from the intestate's great-grandparents and are heirs of the sixth degree.

The trial court held that the estate of William H. Kimrey is not subject to the escheat provisions of G.S. 29-12 and that the estate should be distributed according to the provisions of G.S. 29-7 to all surviving heirs without regard to their degree of relationship to the intestate. On appeal, the Court of Appeals reversed, stating that "G.S. 29-7 has no application unless the common ancestor of the collateral kin and the decedent is a parent or grandparent of the decedent." The court then held that the estate escheated under G.S. 29-12.

*Morgan, Byerly, Post, Herring and Keziah by J. V. Morgan, for the Estate of Thomas Preston Kimrey.*

*Lacy L. Lucas, Jr., and J. Thomas Keever, Jr., for Floyd Ray Kirkman, et al.*

*Moser and Moser by D. Wescott Moser, for Grier G. Newlin, Administrator of the Estate of William Henry Kimrey.*

*Rufus L. Edmisten, Attorney General, by Charles J. Murray, Assistant Attorney General, for Edwin Gill, Treasurer of the State of North Carolina.*

BRANCH, Justice.

[1]   In North Carolina, the devolution of property by descent and distribution is entirely within the province of the General Assembly. *Edwards v. Yearby,* 168 N.C. 663, 85 S.E. 19; *Hodges v. Lipscomb,* 128 N.C. 57, 38 S.E. 281. The rights of relatives to inherit are set forth in G.S. 29-14, G.S. 29-15, G.S. 29-21, and G.S. 29-22. We are not here concerned with illegitimates, and the provisions of G.S. 29-21 and G.S. 29-22 are, therefore, not pertinent to decision.

G.S. 29-14 defines the shares of the surviving spouse in case of intestacy and G.S. 29-15 delineates the shares of all others except those taking from an illegitimate intestate.

After setting forth the shares to be taken by children, lineal descendants, parents, brothers and sisters of the intestate or the lineal descendants of the intestate's brothers and sisters, G.S. 29-15, in pertinent part, provides:

(5) If there is no one entitled to take under the preceding subdivisions of this section or under G.S. 29-14,

    a. The paternal grandparents shall take one half of the net estate in equal shares, or, if either is dead, the survivor shall take the entire one half of the net estate, and if neither paternal grandparent survives, then the paternal uncles and aunts of the intestate and the lineal descendants of deceased paternal uncles and aunts shall take said one half as provided in G.S. 29-16; and

    b. The maternal grandparents shall take the other one half in equal shares, or if either is dead, the survivor shall take the entire one half of the net estate, and if neither maternal grandparent survives, then the maternal uncles and aunts of the intestate and the lineal descendants of deceased maternal uncles and aunts shall take one half as provided in G.S. 29-16; but

    c. If there is no grandparent and no uncle or aunt, or lineal descendant of a deceased uncle or aunt, on the paternal side, then those of the maternal side who otherwise would be entitled to take one half as hereinbefore provided in this subdivision shall take the whole; or

    d. If there is no grandparent and no uncle or aunt, or lineal descendant of a deceased uncle or aunt, on the maternal side, then those on the paternal side who otherwise would be entitled to take one half as hereinbefore provided in this subdivision shall take the whole. (1959, c. 879, s. 1.)

The General Assembly has carefully named the persons who take in cases of intestacy. G.S. 29-14; G.S. 29-15; G.S. 29-21; and G.S. 29-22. In so doing, the Legislature used words describing family relationships such as "parents," "brothers," "sisters," "grandparents," "aunts" and "uncles." We must presume that the Legislature intended that these words bear their ordinary and

usual meaning. *Lafayette Transportation Service v. County*, 283 N.C. 494, 196 S.E. 2d 770. *Greensboro v. Smith*, 241 N.C. 363, 85 S.E. 2d 292. We cannot expand the words "brother," "parent," "grandparent" to include other relationships such as "great-grandfather" or "great uncle." Therefore, the maxim *expressio unus est exclusio alterius* (the expression of one thing is the exclusion of another) tends to exclude collateral kin who are not in the parentela of the intestate's parents or grandparents.

[2]   Thus, standing alone the plain language of G.S. 29-15 limits succession of a decedent's estate to collateral kinsmen who are descended from a parent or grandparent of the intestate. Relying on the language of G.S. 29-15, appellee, Treasurer of the State of North Carolina, takes the position that none of the appellants take under this statute and that the net estate should escheat pursuant to the provisions of G.S. 29-12 and G.S. 116A-2.

Appellants, on the other hand, argue that the provisions of G.S. 29-7 make it clear that the manifest intent of the Legislature was to prevent any property from escheating. In support of their position, appellants rely upon the well-recognized rule that the foremost principle of statutory construction is to ascertain and declare the legislative intent. *Highway Commission v. Hemphill*, 269 N.C. 535, 153 S.E. 2d 22. *Lockwood v. McCaskill*, 261 N.C. 754, 136 S.E. 2d 67. Further, in ascertaining that intent, statutes *in pari materia* should be considered together and reconciled when possible, and any irreconcilable ambiguity should be resolved so as to effectuate the legislative intent. *Commissioner of Insurance v. Automobile Rate Office*, 287 N.C. 192, 214 S.E. 2d 98.

G.S. 29-7 provides:

> There shall be no right of succession by collateral kin who are more than five degrees of kinship removed from an intestate; provided that if there is no collateral relative within the five degrees of kinship referred to herein, then collateral succession shall be unlimited to prevent any property from escheating.

In seeking to determine the intent of the General Assembly in enacting G.S. 29-7, we initially note that the distributive provisions of the Intestate Succession Act provide for succession by close relatives who were in all probability known to the intestate and who would not have been unlikely objects of his bounty had he written a will. In the absence of such relatives, G.S. 29-12 provides for escheat of the estate. Underlying this provision is a logical presumption that

the intestate would not have included distant relatives in his will. Taken as a whole, the Act conveys an intent by the Legislature to write a reasonable will for those residents who have not done so. Had the Legislature desired to provide that no property would escheat, as appellants contend, it would seem that the reasonable method would have been to repeal G.S. 29-12 and G.S. 116A-2. This they did not do.

Another basic fallacy in appellants' contention is that it presupposes that G.S. 29-7 establishes rights of collateral succession. G.S. 29-7, at most, imposes a limitation upon intestate succession, as defined in G.S. 29-15, and by its proviso restates the existing effect of G.S. 29-15, i.e., that collateral descent shall be unlimited when it is within the parentela of an intestate's parents or grandparents. Thus, we conclude that in enacting G.S. 29-7, the Legislature did not intend to eliminate escheats.

[3] The limitation upon collateral succession to heirs within five degrees of kinship to the intestate contained in G.S. 29-7 is a limitation upon succession by heirs descended from parents or grandparents of the intestate. Since Thomas Kimrey was not descended from William Henry Kimrey's parents or grandparents, we must reject the contention of his executors that his status as the only collateral kinsman of the fifth degree entitled Thomas Kimrey to inherit the entire estate of William Henry Kimrey.

The contention of the sixth degree kin that G.S. 29-7 opens to all collateral kin the right to share in the estate of William Henry Kimrey must also be rejected since none of these persons are descended from intestate's parents or grandparents.

We hold that rights of collateral succession are limited to the descendants of the intestate's parents or grandparents. G.S. 29-7 limits such succession to those persons who are within five degrees of kinship to the intestate. The effect of the proviso engrafted upon the statute is to provide for unlimited succession by collateral kinsmen *descended from the intestate's parents or grandparents in the event there are no collateral kinsmen of the fifth degree in such lines of descent.*

[4] This record does not reveal the existence of any collateral kin descended from the parents or grandparents of William Henry Kimrey. Therefore, the Court of Appeals correctly determined that the estate of William Henry Kimrey escheated.

Affirmed.