KATELYN ANDREWS, A MINOR, THROUGH HER GUARDIAN AD LITEM, DAVID ANDREWS; AND DAVID ANDREWS AND ANDREA ANDREWS, INDIVIDUALLY v. VANESSA P. HAYGOOD, M.D., INDIVIDUALLY; CENTRAL CAROLINA OBSTETRICS AND GYNECOLOGY, P.A., A NORTH CAROLINA CORPORATION; THE WOMEN'S HOSPITAL OF GREENSBORO, A NORTH CAROLINA NOT-FOR-PROFIT CORPORATION; KIM RICHEY, R.N., INDIVIDUALLY; AND JENNIFER DALEY, R.N., INDIVIDUALLY v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE, INTERVENOR

No. 57A07-2

(Filed 12 December 2008)

**Subrogation— Medicaid—medical malpractice settlement— reimbursement for prior medical expenditures**

The trial court did not err in a medical malpractice case by subrogating plaintiff's settlement proceeds to the North Carolina Division of Medical Assistance, subject to the one-third statutory limitation, because: (1) *Ahlborn*, 547 U.S. 268 (2006), does not mandate a judicial determination of the portion of a settlement from which the State may be reimbursed for prior medical expenditures, but instead the United States Supreme Court left to the States the decision on the measures to employ in the operation of their Medicaid programs; (2) North Carolina employs an alternative statutory procedure under N.C.G.S. § 108A-57(a) which allows total reimbursement to the State only when the amount of assistance previously paid for medical expenses is one-third of plaintiff's settlement or less; if the amount of the State's claim exceeds one-third of the recovery, our statute limits reimbursement to one-third of the settlement; and plaintiffs are free to negotiate a settlement with the State for a lien amount less than that required by our statutes; and (3) N.C.G.S. § 108A-59(a) pro-

**ANDREWS v. HAYGOOD**

[362 N.C. 599 (2008)]

vides a reasonable framework that comports with the requirements of federal Medicaid law as interpreted by *Ahlborn*.

Justice HUDSON dissenting.

Justices BRADY and TIMMONS-GOODSON join in dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 188 N.C. App. 244, 655 S.E.2d 440 (2008), affirming an order entered on 27 July 2006 by Judge Steve A. Balog in Superior Court, Alamance County. On 10 April 2008, the Supreme Court allowed appellant's petition for discretionary review of additional issues. Heard in the Supreme Court 13 October 2008.

*Wishart, Norris, Henninger & Pittman, P.A., by Pamela S. Duffy and Molly A. Orndorff, for trustee-appellant Charlie D. Brown.*

*Roy Cooper, Attorney General, by Susannah P. Holloway, Assistant Attorney General, for intervenor-appellee North Carolina Department of Health and Human Services, Division of Medical Assistance.*

*Glenn, Mills, Fisher & Mahoney, P.A., by Carlos E. Mahoney, Counsel for North Carolina Academy of Trial Lawyers, amicus curiae.*

NEWBY, Justice.

This case presents the question of whether the statutory framework governing the State's subrogation claim for medical expenses on a Medicaid recipient's tort claim settlement complies with federal Medicaid law as interpreted by the Supreme Court of the United States in *Arkansas Department of Health & Human Services v. Ahlborn*, 547 U.S. 268, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006). Because *Ahlborn* does not mandate a specific method for determining the medical expense portion of a plaintiff's settlement, we uphold North Carolina's reasonable statutory scheme and accordingly affirm the Court of Appeals.

Plaintiff Katelyn Andrews brought suit against defendants, alleging medical malpractice and seeking recovery for injuries she sustained at birth. The parties entered into confidential settlement agreements and established a settlement account for the proceeds.

Because Katelyn is a North Carolina Medicaid recipient, the North Carolina Division of Medical Assistance ("DMA") sought to recover from the account the amount it paid for her medical expenses, $1,046,681.94. The trial court determined the DMA has subrogation rights to the entire amount of the settlement, limited by the statutory provision that only one-third of a recovery is subject to subrogation. N.C.G.S. § 108A-57(a) (2005). Because the amount expended by the DMA was less than one-third of the settlement, the trial court ordered full reimbursement. The trustee of the settlement account appealed.

The Court of Appeals affirmed the trial court's order based on our prior decision in *Ezell v. Grace Hospital, Inc.*, 360 N.C. 529, 631 S.E.2d 131 (2006), *rev'g per curiam for reasons stated in the dissenting opinion*, 175 N.C. App. 56, 623 S.E.2d 79 (2005), *reh'g denied*, 361 N.C. 180, 641 S.E.2d 4 (2006). *Andrews v. Haygood*, 188 N.C. App. 244, 247, 655 S.E.2d 440, 444 (2008). However, a dissent questioned the majority's reliance on *Ezell* because in reversing the Court of Appeals, we did not specifically address the applicability of the holding in *Ahlborn* to the issues in *Ezell*. *Id.* at ——, 655 S.E.2d at 444-45 (Wynn, J., dissenting).

Based on the dissent, the trustee appealed to this Court, and we granted review of additional issues arising from the trial court's denial of requests for an evidentiary allocation hearing and for a delay in resolution of the case until a third party could be joined. The trustee contends that absent an agreement between the parties, federal law requires a judicial determination of the portion of a tort claim settlement that represents the recovery of medical expenses. In response, the DMA contends the statutory one-third limiting provision complies with *Ahlborn's* interpretation of federal Medicaid law. The DMA thus argues that judicial apportionment of medical expenses from the settlement is not required. We agree.

Medicaid is a cooperative program that provides federal and state medical care funding for certain individuals who are unable to afford their own medical costs. *See Ahlborn*, 547 U.S. at 275, 126 S. Ct. at 1758, 164 L. Ed. 2d at 468. Participating states are required by federal law to "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan" and to "seek reimbursement for [medical] assistance [made available on behalf of a recipient] to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25)(A)-(B) (2000). State laws control the administration of the program, including the method by which a state may seek reimbursement for prior Medicaid assistance. *See Ahlborn*, 547 U.S. at

275-77, 126 S. Ct. at 1758-59, 164 L. Ed. 2d at 468-70. State laws, however, must comply with federal Medicaid law. *Id.*

The Supreme Court of the United States addressed the operation of a state's Medicaid reimbursement statute in *Ahlborn,* in which the Court was asked to determine whether the Arkansas Department of Health and Human Services ("ADHS") could claim a statutory lien on a settlement for more than the portion that by stipulation represented the recovery of medical expenses. *Ahlborn,* 547 U.S. at 279-80, 126 S. Ct. at 1760-61, 164 L. Ed. 2d at 470-71. The Arkansas statutes in question[1] allowed total reimbursement to ADHS for all previous medical payments made on the plaintiff's behalf. *Id.* at 278-79, 126 S. Ct. at 1759-60, 164 L. Ed. 2d at 470-71. Ahlborn, a Medicaid recipient, challenged the statute because it permitted reimbursement from settlement proceeds recovered for damages other than medical expenses. *Id.* at 274, 126 S. Ct. at 1757-58, 164 L. Ed. 2d at 468. In her suit against the alleged tortfeasors, she sought compensation for medical expenses, pain and suffering, lost wages, and permanent impairment of her future wage-earning ability. *Id.* at 273, 126 S. Ct. at 1757, 164 L. Ed. 2d at 467. After the parties settled for $550,000, ADHS asserted a lien against the settlement for $215,645.30—the total amount of prior payments made by ADHS for Ahlborn's medical care. *Id.* at 274, 126 S. Ct. at 1757, 164 L. Ed. 2d at 468. Ahlborn challenged the lien, alleging it violated federal Medicaid law "insofar as its satisfaction would require depletion of compensation for injuries other than past medical expenses." *Id.*

Before trial, Ahlborn and ADHS stipulated to several facts. *Id.* at 274, 126 S. Ct. at 1757-58, 164 L. Ed. 2d at 468. The reasonable value of Ahlborn's claim, absent any consideration of liability, was specified to be approximately $3,040,708.18. *Id.* The parties agreed the settlement amount of $550,000 represented approximately one-sixth of the estimated total damages. *Id.* ADHS further stipulated that if Ahlborn's construction of the Arkansas statute were correct, ADHS

---

1. The pertinent sections of the Arkansas Code read:

As a condition of eligibility, every Medicaid applicant shall automatically assign his or her right to any settlement, judgment, or award which may be obtained against any third party to the Department of Human Services *to the full extent* of any amount which may be paid by Medicaid for the benefit of the applicant.

Ark. Code. Ann. § 20-77-307(a) (2001) (emphasis added). Accordingly, "when medical assistance benefits are provided . . . to a . . . recipient because of injury, disease, or disability for which another person is liable . . . the Department of Human Services shall have a right to recover from the person *the cost of benefits so provided." Id.* § 20-77-301(a) (2001) (emphasis added).

ANDREWS v. HAYGOOD

[362 N.C. 599 (2008)]

would only be entitled to reimbursement for one-sixth of the total past medical payments, or $35,581.47. *Id.*

The Supreme Court of the United States determined that ADHS was entitled to recover $35,581.47, the portion of the settlement stipulated to represent Ahlborn's recovery of medical expenses. *Id.* at 292, 126 S. Ct. at 1767, 164 L. Ed. 2d at 479. The Court held: "Federal Medicaid law does not authorize ADHS to assert a lien on Ahlborn's settlement in an amount exceeding $35,581.47 . . . . Arkansas' third-party liability provisions are unenforceable insofar as they compel a different conclusion." *Id. Ahlborn* thus controls when there has been a prior determination or stipulation as to the medical expense portion of a plaintiff's settlement. In those cases, the State may not receive reimbursement in excess of the portion so designated.

The *Ahlborn* holding, limited by the parties' stipulations, did not require a specific method for determining the portion of a settlement that represents the recovery of medical expenses. *See id.* at 288, 126 S. Ct. at 1765, 164 L. Ed. 2d at 476. The Court recognized that "some States have adopted special rules and procedures for allocating tort settlements" under certain circumstances, but ultimately "express[ed] no view on the matter" and "le[ft] open the possibility that such rules and procedures might be employed to meet concerns about settlement manipulation." *Id.* at 288 n.18, 126 S. Ct. at 1765 n.18, 164 L. Ed. 2d at 476 n.18. *Ahlborn* thus does not mandate a judicial determination of the portion of a settlement from which the State may be reimbursed for prior medical expenditures. Instead, the Supreme Court left to the States the decision on the measures to employ in the operation of their Medicaid programs. *Id.*

Our General Assembly created a statutory method to determine the amount of the State's reimbursements for prior medical payments. North Carolina law provides that Medicaid recipients are "deemed to have made an assignment to the State of the right to third party benefits, contractual or otherwise to which [the recipient] may be entitled." N.C.G.S. § 108A-59(a) (2005). Implementation of the recipient's statutory assignment is governed by section 108A-57(a) of our General Statutes:

> Notwithstanding any other provisions of the law, to the extent of payments under this Part, the State . . . shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assistance . . . against any person. . . . Any attorney retained by the beneficiary of the assistance shall, out of

ANDREWS v. HAYGOOD

[362 N.C. 599 (2008)]

> the proceeds obtained on behalf of the beneficiary by settlement with . . . a third party . . . distribute to the Department the amount of assistance paid by the Department . . . *but the amount paid to the Department shall not exceed one-third of the gross amount obtained or recovered.*

*Id.* § 108A-57(a) (2005) (emphasis added). While encouraging complete recovery for past medical payments, the North Carolina statute allows total reimbursement to the State only when "the amount of assistance" previously paid for medical expenses is one-third of the plaintiff's settlement or less. *Id.* If the amount of the State's claim exceeds one-third of the recovery, our statute limits reimbursement to one-third of the settlement. *Id.* Section 108A-57(a) thus prevents excessive depletion of a plaintiff's recovery to satisfy the State's reimbursement lien. Nonetheless, plaintiffs are free to negotiate a settlement with the State for a lien amount less than that required by our statutes.

Rather than requiring a specific determination of the medical expense portion of a settlement, North Carolina employs an alternative statutory procedure that we believe is permitted by *Ahlborn. See Ahlborn*, 547 U.S. at 288 n.18, 126 S. Ct. at 1765 n.18, 164 L. Ed. 2d at 476 n.18. Our state law defines "the portion of the settlement that represents payment for medical expenses" as the lesser of the State's past medical expenditures or one-third of the plaintiff's total recovery, limiting the State's reimbursement to the portion so designated. *See* N.C.G.S. § 108A-57(a); *see also Ahlborn*, 547 U.S. at 282, 126 S. Ct. at 1762, 164 L. Ed. 2d at 472-73. The one-third limitation of section 108A-57(a) thus comports with *Ahlborn* by providing a reasonable method for determining the State's medical reimbursements, which it is required to seek in accordance with federal Medicaid law. *See* 42 U.S.C. § 1396a(25)(A)-(B) (2000).

This statutory scheme protects plaintiffs' interests while promoting efficiency in Medicaid reimbursement cases throughout North Carolina. In enacting our statute, the General Assembly may have considered factors such as the strain on resources to send State employees across North Carolina to participate in evidentiary allocation hearings each time a Medicaid recipient recovers from a third party. Likewise, the legislature may have found it important that a case-by-case determination of the medical expense portion of settlements could lead to variable results and increased litigation due to inconsistency in outcomes. Certainly, "[w]eighing these and other public policy considerations is the province of our General Assembly,

ANDREWS v. HAYGOOD

[362 N.C. 599 (2008)]

not this Court." *Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 463, 665 S.E.2d 449, 453 (2008).

We accord a presumption of validity to the General Statutes of this State. *See, e.g., Wayne Cty. Citizens Ass'n for Better Tax Control v. Wayne Cty. Bd. of Comm'rs*, 328 N.C. 24, 29, 399 S.E.2d 311, 314-15 (1991); *Ramsey v. N.C. Veterans Comm'n*, 261 N.C. 645, 647, 135 S.E.2d 659, 661 (1964). When the General Assembly enacts a statute after examining its legal and public policy implications, it is not the province of this Court to substitute its judgment for that of our legislature. *See, e.g., Shaw*, 362 N.C. at 463, 665 S.E.2d at 453; *Newlin v. Gill*, 293 N.C. 348, 350-52, 237 S.E.2d 819, 821-22 (1977); *see also Bockweg v. Anderson*, 328 N.C. 436, 451-52, 402 S.E.2d 627, 636-37 (1991) (Martin, J., dissenting). As we previously did in *Ezell*, we have again reviewed section 108A-57(a) and find it to be a reasonable framework that comports with the requirements of federal Medicaid law as interpreted by *Ahlborn*. If the General Assembly desires a different result in these cases it may amend the statutes accordingly.

We therefore affirm the Court of Appeals' holding that the trial court did not err in subrogating the plaintiff's settlement proceeds to the DMA, subject to the one-third statutory limitation. Because our resolution of this issue is dispositive, we need not address the requested joinder of United Healthcare and the Court of Appeals decision as to that issue remains undisturbed.

AFFIRMED; DISCRETIONARY REVIEW IMPROVIDENTLY AL-LOWED IN PART.

Justice HUDSON dissenting.

Although I agree with the majority that "[*Arkansas Department of Health & Human Services v.*] *Ahlborn* does not mandate a specific method for determining the medical expense portion of a plaintiff's settlement," the United States Supreme Court nevertheless did explicitly hold in *Ahlborn* that a State may not violate the anti-lien provisions of 42 U.S.C. §§ 1396a(a)(18) and 1396p by requiring a Medicaid recipient to reimburse it out of settlement funds designated for purposes other than medical care. 547 U.S. 268, 284-85, 164 L. Ed. 2d 459, 474 (2006). The terms of the settlement at issue here provide insufficient detail to allow us to determine whether the application of N.C.G.S. § 108A-57(a) would violate the anti-lien provisions of the federal Medicaid statutes, pursuant to the holding in *Ahlborn*.

ANDREWS v. HAYGOOD

[362 N.C. 599 (2008)]

Because I conclude that we are bound to follow *Ahlborn*, I must respectfully dissent.

As observed by the United States Supreme Court, the federally funded and administered Medicaid program is "a cooperative one," with participating states "compl[ying] with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program" in exchange for the federal funding. *Id.* at 275, 164 L. Ed. 2d at 468-69. Among these requirements is "that the state agency in charge of Medicaid . . . 'take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan.' " *Id.* at 275, 164 L. Ed. 2d at 469 (quoting 42 U.S.C. § 1396a(a)(25)(A) (2000) (alteration in original)). Further,

> The [state] agency's obligation extends beyond mere identification, however; "in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability."

*Id.* at 276, 164 L. Ed. 2d at 469 (quoting 42 U.S.C. § 1396a(a)(25)(B)). The federal Medicaid statutes obligate participating states to enact so-called "assignment laws" to provide for such reimbursement. *Id.* at 276-77, 164 L. Ed. 2d at 469-70 (citing 42 U.S.C. §§ 1396a(a)(25)(H), 1396k(a)).

In enacting section 108A-57(a), our General Assembly fulfilled this requirement while also explicitly limiting the percentage of a settlement that the State could recover through assignment:

> Notwithstanding any other provisions of the law, to the extent of payments under this Part, the State, or the county providing medical assistance benefits, *shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assistance*, or of the beneficiary's personal representative, heirs, or the administrator or executor of the estate, against any person. The county attorney, or an attorney retained by the county or the State or both, or an attorney retained by the beneficiary of the assistance if this attorney has actual notice of payments made under this Part shall enforce this section. Any attorney retained by the beneficiary of the assistance shall, out of the proceeds obtained on behalf of the beneficiary by settlement

ANDREWS v. HAYGOOD

[362 N.C. 599 (2008)]

with, judgment against, or otherwise from a third party by reason of injury or death, distribute to the Department the amount of assistance paid by the Department on behalf of or to the beneficiary, as prorated with the claims of all others having medical subrogation rights or medical liens against the amount received or recovered, *but the amount paid to the Department shall not exceed one-third of the gross amount obtained or recovered.*

N.C.G.S. § 108A-57(a) (2005) (emphases added). Moreover, the General Assembly specifically provided that "the provisions of this Part shall be liberally construed in relation to [the ·federal Social Security Act providing grants to the states for medical assistance] so that the intent to comply with it shall be made effectual." *Id.* § 108A-56 (2005). In my view, the majority's interpretation runs contrary to this directive by risking violations of the federal anti-lien provisions, which would render our State out of compliance with Medicaid requirements and thereby jeopardize the funding our State receives.

The General Assembly's explicit direction that we defer to the federal provisions as necessary guides our consideration of the interaction of these federal and state statutes. In addition, because this case involves questions of federal statutory law, we are bound by the United States Supreme Court's interpretation of the federal Medicaid statutes. As this Court has stated:

It is elementary that an act of Congress, in pursuance of the Constitution of the United States, is the supreme law of the land. Constitution of the United States, Article VI, Clause 2. Thus, in case of a conflict between such an act and the law of North Carolina, the act of Congress controls and, so long as it remains in effect, modifies the law of this State and the authority of its courts to render judgment in accordance therewith. It is equally well settled that a decision of the Supreme Court of the United States, construing an act of Congress, is conclusive and binding upon this Court.

*R.H. Bouligny, Inc. v. United Steelworkers*, 270 N.C. 160, 173-74, 154 S.E.2d 344, 356 (1967). The United States Supreme Court decision in *Ahlborn* directly addresses and determines the question presented by this case, as our state statute is similar to the one at issue in *Ahlborn* and the factual situations are analogous. Therefore, I conclude that *Ahlborn* is binding upon this Court, and its reasoning and holding compel the conclusion that the application of N.C.G.S. § 108A-57(a)

**ANDREWS v. HAYGOOD**

[362 N.C. 599 (2008)]

here, without any further determination of how the settlement proceeds were allocated among the different types of damages alleged by plaintiff, would be contrary to federal law.

In delivering the opinion of a unanimous Court in *Ahlborn*, Justice John Paul Stevens framed the issue as follows:

> When a Medicaid recipient in Arkansas obtains a tort settlement following payment of medical costs on her behalf by Medicaid, Arkansas law automatically imposes a lien on the settlement in an amount equal to Medicaid's costs. When that amount exceeds the portion of the settlement that represents medical costs, satisfaction of the State's lien requires payment out of proceeds meant to compensate the recipient for damages distinct from medical costs—like pain and suffering, lost wages, and loss of future earnings. The Court of Appeals for the Eight Circuit held that this statutory lien contravened federal law and was therefore unenforceable. Other courts have upheld similar lien provisions. We granted certiorari to resolve the conflict and now affirm.

547 U.S. at 272, 164 L. Ed. 2d at 467 (internal citations omitted). Thus, contrary to the majority's assertion that the *Ahlborn* holding controls only in situations in which there has been "a prior determination or stipulation as to the medical expense portion of a plaintiff's settlement," the Supreme Court in no way rested its analysis on whether a settlement had been so allocated.

Rather, the Supreme Court in *Ahlborn* "express[ed] no view on" how such allocation should be determined "[e]ven in the absence of such a postsettlement agreement," *id.* at 547 at 288 & n.18, 164 L. Ed. 2d at 476 & n.18, emphasizing instead simply that, regardless of how an allocation is made, "the exception carved out by [the anti-lien provisions laid out in 42 U.S.C. §§ 1396a(a)(18) and 1396p] is limited to payments [by the third party to the plaintiff-beneficiary] for medical care. Beyond that, the anti-lien provision applies," *id.* at 284-85, 164 L. Ed. 2d at 474. Indeed, the Court repeatedly emphasized this point as to "whether [a state agency] can lay claim to more than the portion of [the plaintiff-beneficiary's] settlement that represents medical expenses":

> The text of the federal third-party liability provisions suggests not; it focuses on recovery of payments for medical care. Medicaid recipients must, as a condition of eligibility, "assign the

State any rights . . . *to payment for medical care* from any third party," 42 U.S.C. § 1396k(a)(1)(A) (emphasis added), not rights to payment for, for example, lost wages.

*Id.* at 280, 164 L. Ed. 2d at 471 (alteration in original). More explicitly, "under the federal statute the State's assigned rights extend only to recovery of payments for medical care." *Id.* at 282, 164 L. Ed. 2d at 472. Likewise, "assignment of the right to compensation for lost wages and other nonmedical damages is nowhere authorized by the federal third-party liability provisions." *Id.* at 286 n.16, 164 L. Ed. 2d at 475 n.16.

These statements broadly prohibit a state's claim to reimbursement from any funds not earmarked solely for medical expenses under any circumstances. Accordingly, to the extent that the terms of a settlement are unclear as to the portion designated for medical expenses, the *Ahlborn* analysis requires states to fashion a method to make those determinations and protect their right to reimbursement, for example, "by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." *Id.* at 288, 164 L. Ed. 2d at 476. Simply put, an indispensable step in calculating the amount of a State's right to reimbursement for medical expenses is establishing how much of a third-party settlement has been allocated to the medical expenses of the plaintiff-beneficiary.

The majority would hold that in N.C.G.S. § 108A-57(a), the General Assembly attempted to do just that and that the statute "comports with *Ahlborn* by providing a reasonable method for determining the State's medical reimbursements," namely, capping the reimbursement at no more than one-third of a beneficiary's settlement with a third party. However, application of the bright-line rule articulated by the majority in a case like this one, in which there has been no allocation, could allow precisely the result that is explicitly barred by *Ahlborn*. In fact, this would be the outcome with any settlement in which the amount actually paid by the Division of Medical Assistance (DMA) is greater than the amount of the settlement designated for medical expenses, but less than the one-third cap specified in N.C.G.S. § 108A-57(a).

A hypothetical example illustrates this point.[2] Suppose a plaintiff—a past beneficiary of Medicaid assistance—settles with a tort

---

2. Because the settlement agreements here are confidential and held under seal, I use only hypothetical figures.

feasor for $2 million following an automobile accident. She initially alleged damages totaling $5 million, including $500,000 in past medical expenses, $1 million in future medical expenses, $1.5 million in pain and suffering, and $2 million in lost future earnings income. Medicaid, through DMA, paid the full $500,000 in actual past medical costs for the beneficiary's treatment following the accident. Under the majority's holding and application of N.C.G.S. § 108A-57(a), DMA would be entitled to $500,000 of the settlement. However, without knowing more about how the parties allocated the settlement among the different types of damages sought, the amounts might suggest that the parties, as in *Ahlborn*, reached a settlement that prorated the beneficiary's damages, awarding her forty percent of what she sought in each category of damages. In that scenario, of the $2 million settlement, $200,000 would be designated for past medical expenses, $400,000 for future medical expenses, $600,000 for pain and suffering, and $800,000 for lost future earnings income. Awarding the full $500,000 to DMA would thus exceed the $200,000 designated for past medical expenses and clearly violate the explicit holding of *Ahlborn*.

Likewise, N.C.G.S. § 108A-57(a) and the majority opinion make no distinction between past medical expenses paid by DMA that relate directly to the injury that is the basis of the settlement and expenses that were paid for treatment of a preexisting, ongoing condition. For example, in the scenario outlined above, suppose DMA had paid $500,000 in medical costs for the beneficiary, but only $300,000 of that amount related to the automobile accident, with the balance of $200,000 spent on treatment for the beneficiary's leukemia. Under the majority's holding, DMA could still claim the full $500,000 from the beneficiary, as that amount does not exceed the one-third statutory limitation in N.C.G.S. § 108A-57(a)—even though that recovery would include reimbursement for medical expenses totally unrelated to the accident or the settlement. This result, permitted by this Court's earlier holding in *Ezell v. Grace Hospital, Inc.*, 360 N.C. 529, 631 S.E.2d 131, *rev'g per curiam for reasons stated in the dissent* 175 N.C. App. 56, 623 S.E.2d 79 (2005), *reh'g denied*, 361 N.C. 180, 641 S.E.2d 4 (2006), would clearly violate the anti-lien provisions of the federal Medicaid statutes, contrary to the holding of *Ahlborn*. As such, I also believe we should overrule that decision.

Here, as in *Ahlborn*, plaintiff's civil suit sought damages including, but not limited to, past medical expenses paid by Medicaid and others; the complaint also alleged damages for mental and physical pain and anguish, severe and permanent injury, future medical ex-

penses, loss of future earnings, disfigurement and loss of normal use of her body, her parents' expenses for education and life care, and her parents' emotional distress and derivative claims. These claims were settled among all parties, with proceeds held in a single account and no allocations made as to which specific amounts represented damages for which particular type of claim. Nevertheless, the parties clearly intended the settlement to account for all of the different types of damages alleged not just by plaintiff, but also by her parents. The parties concede that the amount of the settlement here allows DMA to be fully reimbursed for the entire $1,046,681.94 it had paid through October 2005 for plaintiff's medical care, without violating the one-third cap of N.C.G.S. § 108A-57(a). However, the lack of stipulation or other determination as to the allocation of the settlement funds among the damages leaves us unable to conclude whether a DMA lien for full reimbursement would impermissibly entitle DMA to an amount greater than the medical expenses portion of the settlement, as is prohibited by *Ahlborn*.

In addition, the majority misinterprets N.C.G.S. § 108A-57(a) as being the General Assembly's blanket determination that the full one-third of any settlement amount between a plaintiff and a third party is for medical expenses.[3] In my view, that is neither what the statute says nor what it does. According to the plain language of the statute, the legislature envisioned both that a beneficiary could have a private attorney representing her in an action against a third party, *see* N.C.G.S. § 108A-57(a) (referring to "[a]ny attorney retained by the

---

3. Although neither party has raised the issue of unconstitutional impairment of contract before this Court, I also believe the majority's interpretation could lead to the conclusion that N.C.G.S. § 108A-57(a) violates the Contract Clause of the United States Constitution by overriding the intentions of parties to private contract. *See* U.S. Const. art. I, § 10, cl. 1 ("No state shall . . . pass any . . . law impairing the obligation of contracts . . . ."); *Adair v. Orrell's Mut. Burial Ass'n*, 284 N.C. 534, 538, 201 S.E.2d 905, 908 ("Any law which enlarges, abridges or changes the intention of the parties as indicated by the provisions of a contract necessarily impairs the contract . . . .") (citations omitted), *appeal dismissed*, 417 U.S. 927 L. Ed. 2d 231 (1974).

I recognize that such impairment is sometimes permissible "to protect the general welfare of its citizens, so long as such impairment is reasonable and necessary to serve an important public purpose." *Bailey v. State*, 348 N.C. 130, 151, 500 S.E.2d 54, 66 (1998) (citing *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 25-26, 52 L. Ed. 2d 92, 111-12 (1977)). However, " 'a State is not free to impose a drastic impairment when an evident and more moderate course would serve its purposes equally well.' " *Id.* at 152, 500 S.E.2d at 67 (quoting *U.S. Trust*, 431 U.S. at 31, 52 L. Ed. 2d at 115). Moreover, " '[i]n applying this standard, . . . complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake.' " *Id.* at 151, 500 S.E.2d at 66 (quoting *U.S. Trust*, 431 U.S. at 25-26, 52 L. Ed. 2d at 112 (alteration in original)).

beneficiary of the assistance"), and that for most settlements, damages for medical expenses would be prorated among the various providers, *see id.* (requiring the recipient's attorney to "distribute to the Department the amount of assistance paid by the Department on behalf of or to the beneficiary, as prorated with the claims of all others having medical subrogation rights or medical liens against the amount received or recovered"). Thus, the General Assembly itself recognized that either stipulations by the parties or evidentiary hearings would be necessary to determine the amount of recovery by DMA and others seeking reimbursement for payment of medical expenses. Moreover, as with other lien statutes, *see, e.g.,* N.C.G.S. § 97-10.2(f) (2005) (Workers' Compensation Act), the General Assembly acknowledged that the beneficiary's attorney would likely be entitled to a large percentage of the settlement as a contingent fee; as such, the one-third cap represents a reasonable ceiling on the amount paid to DMA while also ensuring that the beneficiary would still recover a meaningful proportion of the settlement.

This reading of the statute is supported by the public policy rationale that underpins the federal requirements for "assignment laws" adopted by the states to seek reimbursement for the Medicaid payments they make. Such assignments prevent "double recovery" by a beneficiary: because the beneficiary is required to repay Medicaid from the medical expenses portion of his settlement with a third-party tortfeasor, he does not keep both the State's money and damages recovered from the tortfeasor. However, both the federal and state statutory schemes rely on the beneficiary—not the State or county—to bring a civil action against the third-party tortfeasor. Indeed, without the beneficiary's action to bring the suit, the State may enjoy no recovery at all for the Medicaid payments it made to the beneficiary as a result of the injury or accident. Thus, the State seeks to encourage beneficiaries to bring such suits. Accordingly, the statute is designed to protect the State's interest in having the suit brought by providing an incentive for the beneficiary to bring the suit—namely, by safeguarding some portion of the settlement for the beneficiary rather than allowing all of the proceeds to be paid to the attorneys and to DMA and other medical lienholders. Without this guarantee of some return, beneficiaries would be unlikely to go through the time and inconvenience associated with pursuing a civil action, and the State or DMA would be left with no recovery at all.

Application of N.C.G.S. § 108A-57(a) in a manner consistent with this rationale likewise comports with the reasoning relied upon by

the United States Supreme Court in *Ahlborn* to ensure that a state Medicaid agency does not "force an assignment of, or place a lien on, any other portion of [the beneficiary's] property" or settlement proceeds designated to compensate a beneficiary for other types of damages. 547 U.S. at 284, 164 L. Ed. 2d at 474. Specifically, *Ahlborn* compels our State to apply N.C.G.S. § 108A-57(a) in compliance with the following language:

> Federal Medicaid law does not authorize [the state agency] to assert a lien on [a beneficiary's] settlement in an amount exceeding [the pro rata portion designated as reimbursement for medical payments made], and the federal anti-lien provision affirmatively prohibits it from doing so. [The State's] third-party liability provisions are unenforceable insofar as they compel a different conclusion.

*Id.* at 292, 164 L. Ed. 2d at 479. Thus, I would not find that N.C.G.S. § 108A-57(a) violates the federal anti-lien provisions on its face, as it could be applied to factual situations in which the parties have stipulated, or an evidentiary hearing has determined, how to allocate the settlement proceeds among medical expenses and other damages. Nevertheless, I conclude that here, when the settlement proceeds have not been so allocated, the only way to ensure that the application of the statute complies with *Ahlborn* is to provide for such an allocation.[4]

I would therefore reverse the Court of Appeals with instructions to remand to the trial court to hold an evidentiary hearing to ensure that the DMA lien is not applied to settlement proceeds aside from those designated to reimburse medical expenses.

Justices BRADY and TIMMONS-GOODSON join in this dissenting opinion.

---

4. As noted by the Supreme Court in *Ahlborn*, the risk of settlement manipulation, also discussed by Judge Steelman in his dissent in *Ezell*, 175 N.C. App. at 65-66, 623 S.E.2d at 85, "can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." *Ahlborn*, 547 U.S. at 288, 164 L. Ed. 2d at 476. In addition, the United States Supreme Court disavowed this rationale—that was the basis of Judge Steelman's dissent, which we adopted, 360 N.C. 529, 631 S.E.2d 131—and observed that "there [is] a countervailing concern that a rule of absolute priority might preclude settlement in a large number of cases, and be unfair to the recipient in others." *Ahlborn*, 547 U.S. at 288, 164 L. Ed. 2d at 476. For this reason too I would disagree with the majority opinion's conclusion that *Ezell* is still good law.