*647 Chief Justice Roberts,
with whom Justice Scalia and Justice Thomas join, dissenting.
The State of North Carolina paid for E. M. A.’s medical expenses under its Medicaid plan. E. M. A. sued those alleged to have caused her injuries, eventually settling for an amount that included, among other things, medical expenses already covered by North Carolina. The federal Medicaid statute requires North Carolina to recoup those expenses. But neither the Act nor the regulations issued under it tell States how to determine what portion of a third-party recovery should be attributed to medical expenses. The Court concludes that North Carolina’s law addressing that question is nonetheless preempted by the Act.
The Court’s reading of the Act, while plausible, is not compelled by the statutory text or our precedent. It has the unfortunate consequence of denying flexibility to the States—and, by necessary implication, the Secretary of Health and Human Services—in resolving a policy question with broad significance for this complicated program. In short, the result is both unnecessary and unwise. I therefore respectfully dissent.
H-Í
Medicaid is a cooperative federal-state program designed to provide medical assistance to certain needy populations. The basic idea is simple: The statute—as interpreted by the Secretary of HHS—sets out the requirements for an eligible Medicaid program. If States decide to enroll and comply with those requirements, they get federal money. If they don’t, they don’t. The federal contribution is not enough to fully fund any State’s program; States contribute anywhere from 17 to 50 percent of the costs. See 42 U. S. C. § 1396d(b) (2006 ed., Supp. V). The States have considerable discretion in structuring and administering their programs, subject of course to federal law and regulations.
*648 In practice, it’s not always so simple. The books are thick with federal regulations that States must interpret and reconcile. By my count, at least 39 federal-court opinions, including one of our own, have reiterated Judge Friendly’s observation that Medicaid law is “almost unintelligible to the uninitiated.” See Schweiker v. Gray Panthers, 453 U. S. 34, 43 (1981) (quoting Friedman v. Berger, 547 F. 2d 724, 727, n. 7 (CA2 1976)); see also 453 U. S., at 43, n. 14 (quoting the District Court’s description of Medicaid in Friedman as “an aggravated assault on the English language, resistant to attempts to understand it”). “Perhaps appreciating the complexity of what it had wrought, Congress conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the Act.” Schweiker, supra, at 43. But where the law and the Secretary are silent on a specific question, it is up to the States—sometimes informally advised by the federal Centers for Medicare & Medicaid Services—to make sense of it all in running then-programs.
The relevant provisions here require that North Carolina (1) pay for certain people’s medical care, (2) make reasonable efforts to recoup from liable third parties (such as tortfeasors and insurers) any medical expenses it paid, and (3) not recoup such payments by imposing a lien on the beneficiary’s property. See ante, at 633; see also 42 U. S. C. § 1396a(a) (25)(B) (2006 ed.). To comply, North Carolina pays for a beneficiary’s medical expenses on the condition that any such expenses the beneficiary recovers from third parties will go toward repaying the State. See N. C. Gen. Stat. Ann. § 108A-59(a) (Lexis 2011).
The difficulty, however, is that tort victims seldom seek only medical expenses. Take this case: E. M. A. and her parents sought damages not only for medical expenses, but for lost income, pain and suffering, and other things, and ended up settling all these claims for a lump sum of $2.8 million. Such a situation poses the question of how much *649 North Carolina can recoup—indeed, under federal law, must recoup—from a lump sum that reflects more than just medical expenses.
This puts North Carolina in a tight spot. If it fails to recover what it must, it violates federal law. If it takes a beneficiary’s property beyond medical expenses, it violates federal law. Trying to navigate between these competing requirements—with no interpretive guidance from the Secretary of HHS—North Carolina elected to resolve the problem by laying out ground rulés in advance, conditioning a beneficiary’s right to recover from third parties on the beneficiary’s willingness to fully repay the State, or, at a minimum, define one-third of her damages as “medical expenses,” whichever is less. N. C. Gen. Stat. Ann. §§ 108A-59(a), 108A-57(a); see also Andrews v. Haygood, 362 N. C. 599, 603-604, 669 S. E. 2d 310, 313-314 (2008).
J—j I—I
The Court states that “[t]he problem” with North Carolina’s designation—actual expenses or one-third of the recovery, whichever is less—“is not that it is an unreasonable approximation in all cases,” and acknowledges that “[i]n some cases, it may well be a fair estimate.” Ante, at 637. According to the Court, however, because North Carolina’s law provides no “mechanism for determining whether it is a reasonable approximation in any particular case,” ibid, (emphasis added), it “directly conflict[s]” with the “clear mandate” of the federal Medicaid statute, and is therefore preempted, ante, at 636 (quoting PLIVA, Inc. v. Mensing, 564 U. S. 604, 617 (2011); internal quotation marks omitted), 639. This reflects a basic policy judgment: that segregating medical expenses from a lump-sum recovery must be done on a case-specific, after-the-fact basis, rather than pursuant to a general rule spelled out in advance.
The problem is that the Court can point to no statutory or regulatory requirement, much less an unambiguous one, *650 requiring such an approach. The federal statute, which provides that States must recoup medical expenses owed by third parties, and which prevents States from placing a lien on a beneficiary’s property, says nothing about how to comply with these two requirements in the event of a settlement. See ante, at 644 (Breyer, J., concurring) (“The statute is silent on the question”).
Nor does our case law. As the Court acknowledges, our decision in Arkansas Dept. of Health and Human Servs. v. Ahlborn, 547 U. S. 268 (2006), was an easy one. There, the underlying tort suit settled for $550,000, and the Medicaid beneficiary and the State of Arkansas stipulated that only $35,581.47 of the settlement represented medical expenses. The State nonetheless claimed it “was entitled to a lien in the amount of $215,645.30”—i. e., the total amount paid by the State for the beneficiary’s health care. Id., at 274. The question was whether the State could demand this money in light of its stipulation that only $35,581.47 reflected medical expensés. The answer, of course, was no. The State is only entitled to recover medical expenses; nothing else. So when Arkansas contended that it was entitled to money the beneficiary had received for something other than medical expenses, we had no trouble rejecting that argument. That proposition—that States may not take money that is unrelated to medical expenses—does not help answer the question here: May a State condition Medicaid benefits on a beneficiary agreeing to define one-third of a tort recovery as reflecting “medical expenses?”
The Court recognizes that Ahlborn “had no occasion to resolve” the question “how to determine what portion of a settlement represents payment for medical care,” ante, at 634, but then promptly proceeds as if Ahlborn had done just that. The Court quotes Ahlborn for the proposition that a State may not claim any portion of a tort recovery “not ‘designated as payments for medical care,’ ” and then faults North Carolina’s law because it “sets forth no process for determining *651 what portion” is “attributable to medical expenses.” Ante, at 635 (quoting 547 U. S., at 284), 636. Ahlborn spoke of “designated” amounts because, as noted, there was a stipulated designation in that case. What to do when there is no such stipulation—when it’s not clear “what portion of a settlement represents payment for medical care”—is a different question. The Court assumes the answer must be the same: that the settlement must be parsed in every case, so that there is an actual, after-the-fact designation in every case. If the parties do not agree on one, as they did in Ahlborn, there must be a process in place for reaching a case-specific attribution.
The nature of the “process” contemplated by the majority is unclear, but it must involve an effort to determine what claims would have succeeded had there been a trial, what the damages would have been for the separate claims, and so on—the very sort of inquiries settlement is intended to obviate. The Court talks of addressing these concerns through “rebuttable presumptions and adjusted burdens of proof to ensure that speculative assessments of a plaintiff’s likely recovery do not defeat the State’s right to recover medical costs,” but ominously declines to give any assurance “that these rules are necessarily compliant with the federal statute.” Ante, at 641.
Nothing in Ahlborn requires all this, and North Carolina has taken a different approach. It has adjusted its tort law to account for its obligations under federal Medicaid law by requiring that beneficiaries pay the State back in full or designate one-third of any recovery as “medical expenses,” whichever is less. This approach allows beneficiaries to obtain settlements, “meet[s] concerns about settlement manipulation,” Ahlborn, supra, at 288, n. 18, complies with the statutory obligation that States make reasonable efforts to recover medical expenses from liable third parties, and guarantees that the beneficiary will never have to give back more than she has already received from the State.
*652 There’s nothing unusual about such an approach. States define the contours of their own tort law all the time, setting rules about who may recover in particular circumstances, what claims may be alleged, which parties are liable, what defenses may be asserted, what damages are recoverable, and so on. Doing so does not amount to imposing a lien on any property to which an individual has a vested right under state tort law. The Court says North Carolina cannot rely on its “traditional authority to regulate tort actions” because its rule in this case is not an exercise of its “general authority.” Ante, at 639-640. The Court cites no support for this vague new limitation on a State’s power to define tort remedies under state law, and I am aware of none.
In fact, federal law says nothing about how States must define the recovery available to a Medicaid beneficiary suing a third party. That silence is a good indication that Congress did not mean to strip States of their traditional authority to regulate torts. See Wyeth v. Levine, 555 U. S. 555, 565 (2009) (“[I]n all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress” (internal quotation marks and ellipses 'omitted)). The closest the Medicaid Act gets to this topic is its requirement that States have “in effect laws under which . . . the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services.” 42 U. S. C. § 1396a(a)(25)(H). That Congress has said nothing else about what recovery a State must allow, though clearly aware of the traditional power of States to regulate recoveries under private law, should be worth something. Cf. Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U. S. 141, 166-167 (1989) (“The case for federal pre-emption is particularly weak where Congress has indicated its awareness of *653 the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them” (internal quotation marks omitted)).
The majority nonetheless dismisses North Carolina’s solution as an arbitrary “one-size-fits-all” approach, ante, at 639, that has no “logical” endpoint; one that, if accepted, could permit States to “designate half, three-quarters, or all of a tort recovery in the same way,” ante, at 637. This is an age-old objection to any line drawing, to which Justice Holmes provided a familiar response: “Neither are we troubled by the question where to draw the line. That is the question in pretty much everything worth arguing in the law.” Irwin v. Gavit, 268 U. S. 161, 168 (1925). Whatever the case “as a doctrinal matter,” it is in fact “easier to defend North Carolina’s” one-third designation than the Court’s hypothetical where a State allocates all of a recovery to medical expenses. Ante, at 637. In addition, the majority’s hobgoblin is less frightening when we remember that North Carolina never takes back more than what it paid for such expenses.
The reasons for drawing a bright line, as North Carolina has, are obvious and familiar. See generally Scalia, The Rule of Law as a Law of Rules, 56 U. Chi. L. Rev. 1175 (1989). Bright lines provide clear notice; here that means beneficiaries know exactly where they stand with respect to reimbursing the State as they negotiate settlements with third parties. Such clear rules are easy, cheap, and adminis-trable—laudable qualities in the context of a vast and intricate program. The Court’s approach, on the other end, requires the time of lawyers and judges, and that time costs money—money better spent on providing health care to the needy. Or so the State, responsible for administering its program, could conclude, and nothing in the statute, regulations, or our precedent says otherwise.
The majority points out that nearly one-third of the States conduct hearings of the sort it contemplates. Ante, at 641. *654 Good for them. The whole point of our federal system is that different States may reach different judgments about how to run their own different programs. Such flexibility is particularly important in this context, where Medicaid spending is the largest component of most state budgets. The Court also notes that, in other areas, courts have undertaken the work of “separating] lump-sum settlements or jury awards into categories to satisfy different claims.” Ante, at 642. My point is not that the work required by the Court cannot be done—just that it has not been required by Congress or the Secretary.
On that note, it’s bad enough that the Court finds the State’s reasonable effort to reconcile its competing obligations preempted. What is doubly unfortunate is that the Court’s analysis necessarily implies that the Secretary’s hands are also tied. The Medicaid Act is Spending Clause legislation, and such legislation is binding on States only insofar as it is “unambiguous.” See Pennhurst State School and Hospital v. Halderman, 451 U. S. 1, 17 (1981). In addition, the anti-lien provision only precludes North Carolina’s law if, as the Court acknowledges, there is a direct conflict between the two. Ante, at 636 (quoting PLIVA, Inc., 564 U. S., at 617). The Court says—wrongly, I believe—that there is. Ante, at 639 (“An irrebuttable, one-size-fits-all statutory presumption is incompatible with the Medicaid Act’s clear mandate that a State may not demand any portion of a beneficiary’s tort recovery except the share that is attributable to medical expenses” (emphasis added)). But if North Carolina’s approach directly conflicts with an unambiguous, clear mandate in the Act—such that any presumption against preemption is overcome, see Wyeth, supra, at 565, n. 3—it is hard to see how the Secretary could adopt a similar approach. See Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 842-843 (1984) (“If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, *655 must give effect to the unambiguously expressed intent of Congress”).
The concurrence wishes this were not so, see ante, at 646 (“today’s decision does not freeze the Court’s present interpretation of the statute permanently into law”), but fails to acknowledge the express rationale of the Court’s opinion. There is no other way to read the majority opinion than as foreclosing what the concurrence would like to leave open.
Or is there? In exactly two sentences, the Court seems to falter and lose the courage of its conviction that a State must have a process in place for an individual allocation of medical expenses in every case. The Court views the problem with North Carolina’s law as being that “the State provides no evidence to substantiate its claim that the one-third allocation is reasonable in the mine run of cases.” Ante, at 637. That thought does not resurface until six pages later—and only then—when the Court says that States “may even be able to adopt ex ante administrative criteria for allocating medical and nonmedieal expenses, provided that these criteria are backed by evidence suggesting that they are likely to yield reasonable results in the mine run of cases.” Ante, at 643.
I am not sure whether this is a concession that individualized hearings may not be required after all, but if it is, it is flatly contrary to the rest of the opinion. It is also quite odd to suggest that the problem with North Carolina’s law would go away if only the State provided some sort of study substantiating the idea that one-third was a good approximation in most cases. North Carolina is not a federal agency, whose actions are subject to review under the Administrative Procedure Act’s “substantial evidence” test. See 5 U. S. C. § 706(2)(E). We have never before, in a preemption ease, put the burden on the State to compile an evidentiary record supporting its legislative determination. The burden is, of course, on those challenging the law. See Pharmaceutical Research and Mfrs. of America v. Walsh, 538 U. S. 644, *656 661-662 (2003) (plurality opinion) (“We start. . . with a presumption that the state statute is valid, and ask whether petitioner has shouldered the burden of overcoming that presumption” (citation omitted)). We have said that, as a general matter, “Congress is not obligated, when enacting its statutes, to make a record of the type that an administrative agency or court does to accommodate judicial review.” Turner Broadcasting System, Inc. v. FCC, 620 U. S. 180, 213 (1997) (internal quotation marks omitted). Sovereign States should be accorded no less deference.
Keep in mind that the basis for all this is a federal law that prohibits liens for medical assistance, but says nothing about how medical and nonmedical expenses are to be allocated. It is hard enough to figure out what the Medicaid Act means by what it says; we should not read so much into its silence.
Ultimately, it is a basic policy judgment whether the Medicaid program is best served in this instance by post hoc individualized determinations, or whether the issue may be addressed in advance, through a general rule, as North Carolina has done here. See ante, at 644 (Breyer, J., concurring) (“any of several different answers to the question would seem reasonable”). The Court can point to nothing that delegates to it the prerogative to make that judgment. Rather, States and the Secretary—working together— should be afforded the leeway to make their joint venture a workable one.
Because North Carolina's law does not conflict with federal law, I would let it be. I respectfully dissent.